**James B. CLARK, et al., Plaintiffs,**

v.

**MARENGO COUNTY, et al.,
Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**MARENGO COUNTY COMMISSION, et al., Defendants.**

**Civ. A. Nos. 77–445–H, 78–474–H.**

United States District Court,
S.D. Alabama, N.D.

Sept. 5, 1985.

after a suit is commenced. *Associated Dry Goods Corp.*, 449 U.S. at 597–98, 101 S.Ct. at 821–22, *citing EEOC Compliance Manual* § 83.-3(b).

&#9758;38

J.L. Chestnut, Jr., Selma, Ala., and Larry T. Menefee, Mobile, Ala., for individual plaintiffs.

Cartledge W. Blackwell, Jr., Selma, Ala., for Marengo County, et al.

J. Gerald Hebert, Christopher G. Lehmann, Dept. of Justice, Civil Rights Div., Washington, D.C., for United States.

Hugh A. Lloyd, Demopolis, Ala., for Marengo County Bd. of Educ., et al.

W.W. Dinning, Demopolis, Ala., for Joseph C. Camp, etc.

Edward S. Allen, Birmingham, Ala., for J. Marks Abernathy, etc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAND, Chief Judge.

This cause came on before the Court in March, 1985 on a post-remand hearing. The ordered purpose of the hearing was to determine whether conditions in Marengo County had sufficiently changed since 1978 to affect the Court of Appeals' finding of discriminatory results as they related to election procedures for the Marengo County Commission and the Marengo County School Board. *United States v. Marengo County Commission*, 731 F.2d 1546, 1574 (11th Cir.1984). Based upon the evidence produced at the hearing, briefs and arguments of counsel, the Court determines that pursuant to its directions no significant changes have occurred since 1978 that affect the Eleventh Circuit Court of Appeals' finding of a Section 2 violation.

In making this determination the Court notes that it does so in order to comply with the mandate. This Court's original findings were contrary to those of the Eleventh Circuit Court of Appeals and were reversed, despite this Court's opportunity to view the witnesses, judge their credibility, and draw rational and logical inferences from that testimony. This Court still adheres to its previous findings, nevertheless, given the decision and mandate this Court's function has in its essentials been reduced to the merely ministerial. Under the law of this case, there is nothing left to do but ratify the Eleventh Circuit's decision.

Accordingly, the Court concludes that the plaintiffs are entitled to injunctive relief, that Marengo County's at-large method of electing members to the County Commission and the School Board must be abolished, and that a plan for electing members to those boards based upon single member districts must be formulated, established and implemented.

In this litigation, the United States and private plaintiffs challenged the at-large method of electing the Marengo County Commission and the Marengo County Board of Education as violative of Section 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments. The United States Court of Appeals for the Eleventh Circuit, *United States v. Marengo County Commission,* 731 F.2d 1546 (1984), directed this Court to supplement the record with any evidence that might tend to effect the appellate court's findings of a violation of Section 2 of the Voting Rights Act as of 1978.

This cause was originally filed by the United States on August 25, 1978. The case was consolidated with a private class action filed in 1977 by black voters. A four-day trial was held on October 23–25, 1978 and January 4, 1979. On April 23, 1979, this Court issued an opinion and entered judgment for the defendants. This Court determined that while intentional discrimination could be inferred from an aggregate of factors articulated in *Zimmer v. McKeithen,* 485 F.2d 1297 (5th Cir.1978 *en banc), aff'd on other grounds sub nom East Carroll Parish School Board v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976) *per curiam,* such an inference was not warranted here. The Court further concluded that plaintiffs had not proved that the at-large system was enacted or being maintained with a racially discriminatory purpose, a finding to which this Court still steadfastly adheres.

Thereafter, the United States appealed the decision of this Court. While the appeal was pending, the United States Supreme Court decided *City of Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), in which a plurality of the Court concluded that a showing of purposeful discrimination is a necessary ingredient of a violation of the Fifteenth Amendment and a majority of the Court held that the factors used in the *Zimmer* analysis were insufficient to show a violation of the Constitution. Thereafter, the court of appeals in this case, upon motion of the United States, vacated this Court's judgment and remanded for further proceedings "including the presentation of such additional evidence as is appropriate, in light of the decision of the Supreme Court in *City of Mobile v. Bolden.*"

While this case was pending on remand, the Fifth Circuit decided *Lodge v. Buxton,* 639 F.2d 1358 (1981), *aff'd sub nom Rogers v. Lodge,* 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982), holding that the United States Supreme Court's decision in Mobile did not require direct evidence of discriminatory intent, but stating, "an essential element of a 'prima facie' case of [unconstitutional vote dilution] is proof of unresponsiveness by the public body in question to the group claiming injury." 639 F.2d at 1375. Following the decision in *Lodge v. Buxton,* this Court, on July 30, 1981, again ordered judgment for defendants on the grounds that this Court had previously concluded that plaintiffs had failed to prove defendants' unresponsiveness to the particularized needs and interests of Marengo County's black citizens.

The United States again appealed and the Eleventh Circuit Court of Appeals granted the Government's motion to hold the appeal in abeyance pending the United States Supreme Court's review of *Lodge v. Buxton.* One year later, on July 1, 1982, the United States Supreme Court affirmed the results in *Lodge,* but contrary to the court of appeals' decision in *Lodge,* the Supreme Court found that unresponsiveness is not an essential element of the claim of unconstitutional dilution. *Rodgers v. Lodge, supra,* 458 U.S. at 625 n. 9, 102 S.Ct. at 3280 n. 9.

In addition, two days prior to the Supreme Court's decision in *Rodgers v. Lodge,* Congress amended Section 2 of the Voting Rights Act. In amending Section 2 "Congress redefined the scope of Section 2 of the Act to forbid not only those voting practices directly prohibited by the Fifteenth Amendment, but also any practice imposed or applied ... in a manner which *results* in a denial or abridgement of the

right ... to vote on account of race ...." *United States v. Marengo County, supra,* 731 F.2d at 1553.

On May 14, 1984, the court of appeals decided this case, applying amended Section 2 of the Voting Rights Act and concluded that there was a violation of Section 2. *United States v. Marengo County Commission, supra,* at 1574. The Court of Appeals held that Marengo County's at-large election system had the proscribed racially discriminatory "result" as of the time of the 1978 trial. 731 F.2d at 1574–1575. The Court of Appeals also concluded that in view of the convoluted procedural history of the case, as well as the five years that had elapsed since trial, the case should be remanded to determine whether the current conditions in Marengo County had changed since 1978. The court of appeals therefore remanded the case to this Court "to allow the parties to update the record and to supplement the record with evidence that might tend to affect our finding of discriminatory results." 731 F.2d at 1574. That Court further noted that "the defendants bear the burden of establishing that circumstances have changed sufficiently to make our findings of discriminatory results in 1978 inapplicable in 1984." 731 F.2d at 1575.[1]

Evidentiary hearings were held in August 1984 for the purpose of determining "whether or not to grant the United States' motion for a preliminary injunction enjoining the defendants from holding at-large elections [in September 1984] for positions on the Marengo County Commission and the Marengo County Board of School Commissioners", which was granted and in March 1985 on the merits of the remand order. On the basis of the evidence offered at these hearings, the Court now concludes there is no particular change of circumstance from that prevailing in 1978 except in regard to the School Board, but since value assessments by this Court are of no weight, it would be useless to catalog these.

## CONCLUSIONS OF LAW

1. Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, provides as follows:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2) of this title, as provided in subsection (b).

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided,* That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

2. The Eleventh Circuit Court of Appeals determined that "the record shows a clear violation of the results test adopted by Congress in Section 2 of the Voting Rights Act". 731 F.2d at 1574. That determination was based on the conditions that prevailed in Marengo County in 1978 when this case was originally tried. Under the court of appeals' decision, "the defendants bear the burden of establishing that circumstances have changed sufficiently to make [the] finding of discriminatory results in 1978 inapplicable in 1984". 731 F.2d at 1575. In accordance with that mandate, this Court has evaluated the political oppor-

---

1. Although this Court has considerable concerns about the constitutionality of placing the burden

of proof on the defendants, this Court must adhere to the mandate of the Eleventh Circuit.

tunities for Marengo County's black citizens as of today and renders these conclusions of law.

3. In determining whether black voters in Marengo County "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice," 42 U.S.C. § 1973, the Court is required to consider and has considered the "totality of circumstances" in Marengo County. The Court has given attention to the following issues: (1) racial bloc voting; (2) the appointment of qualified black persons to work at the polls on election day; and (3) socioeconomic conditions such as education, employment, housing and health, and the impact of these effects on the current political opportunities of minority voters. In compliance with the mandate, this Court did not conduct "a retrial of any issues already tried and reviewed by [the court of appeals]." 731 F.2d at 1574.

4. In view of these conclusions, the Court holds that the defendants have failed to show that the "circumstances have changed" since 1978,[2] therefore the at-large method of electing the Marengo County Commission and the Marengo County School Board violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973. See *United States .v. Marengo County, supra.*

5. Because the at-large election schemes have been found violative of section 2, it is unnecessary for the Court to reach the constitutional claims presented.[3] Indeed, that inquiry appears to be precluded by the mandate of the Eleventh Circuit when it stated, "[t]he purpose of the remand is to allow the parties to update the record and to supplement the record with evidence that might tend to effect [the] finding of discriminatory *results.*" *United*

*States v. Marengo County Commission,* 731 F.2d at 1574 (emphasis added).

## ORDER

1. The defendants shall immediately prepare fair election plans for the County Commission and the County School Board and file those plans with the Court. The plans shall provide for the election of members of the County Commission and School Board by single member districts. These filings shall be made no later than 45 days from the entry of this decision. Simultaneous with defendants' filings in this Court, defendants shall seek preclearance of said plans under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. See *McDaniel v. Sanchez,* 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981). Once the Section 5 process has been completed, this Court will then undertake its review of said plans.

2. As previously noted, the defendants were enjoined in 1984 by this Court from holding scheduled elections under the at-large system, terms. The defendant shall also prepare a schedule for holding elections at the earliest possible date under the proposed plans and shall submit the proposed election schedule for Section 5 preclearance at the same time said plans are submitted.

The Court retains jurisdiction of this matter for purposes of issuing additional orders as may be appropriate.

---

**2.** As previously noted, the Court has doubts as to the constitutional propriety of placing the burden of proof and persuasion on the defendants. As repeatedly noted, however, that procedure was mandated by the Eleventh Circuit's opinion in *United States v. Marengo County Commission, supra.*

**3.** Although the record contains evidence from which to find a discriminatory result under the totality of circumstances test, the Court would be hard pressed to find intentional discrimination in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution.