UNITED STATES of America; James Clark, Jr., et al., Plaintiffs,

v.

MARENGO COUNTY COMMISSION, Marengo County, Alabama; Glass, Aubrey L., President; Holt, D.W.; Etheridge, Grey; Brame, Jimmie and Stephens, Wiley G., Commissioners; Marengo County Board of Education, Marengo County, Alabama; Miller, Thomas N., President; Mason, Joe C.; Tucker, Robert; Flowers, Wallace and Lofton, Moses, Members; Daniels, Sammie, Probate Judge; Camp, J.C., Chairman, Marengo County Democratic Executive Committee; and Armstead, Starkey, Chairman, Marengo County Republican Executive Committee; Smith, W.H. "Billy", Sheriff; Sealey, Dwaine, Clerk of the Circuit Court for Marengo County, Defendants.

Civ. A. No. 78–474–H.

United States District Court,
S.D. Alabama, N.D.

Aug. 8, 1986.

Jefferson B. Sessions, III, W.A. Kimbrough, Jr., U.S. Attys., Mobile, Ala., J. Gerald Hebert, Voting Section, Civil Rights Div., Dept. of Justice, Washington, D.C., for U.S.

J.U. Blacksher, Larry T. Menefee, Mobile, Ala., for plaintiffs James Clark, Jr., et al.

Cartledge W. Blackwell, Jr., Selma, Ala., for Marengo County Com'n.

Hugh A. Lloyd, Demopolis, Ala., for Marengo County Bd. of Educ.

Cartledge W. Blackwell, for remaining defendants.

W.W. Dinning, Demopolis, Ala., for Joseph C. Camp.

## PRELUSION

HAND, Chief Judge.

The Order that follows is entered by this Court pursuant to the Mandate of the Court of Appeals directing this Court to district Marengo County for election purposes as to the County Commission and the School Board. In complying with this Mandate, the Court does so because it legally must under our system, and not because it believes it is constitutionally required. The appellate courts have apparently concluded that the Constitution has been amended in proper form to authorize the federal

government's intervention in the state election process. So be it.

The resolution of the perceived problem requiring the federal courts to district for election purposes so as to give an indentifiable minority the right to elect is, in the opinion of this Court, ill conceived and short sighted. The Court might concede the argument that in the short term it may serve as a quick fix to the problem of past discrimination, but, quick fixes are not always lasting solutions, nor the best solutions. This quick fix fixes in concrete the segregation of the races in Marengo County in the name of the election process, and requires that the County be partited for the purpose of establishing majority districts of the minority race so that they can elect. In so doing, it necessarily follows that some members of either race are thereby fixed in a minority position in other districts. By the logic of the argument advanced, [which says that to deprive the minority of the right to elect transgresses their constitutional right to elect], it thus creates a disenfranchisement of the minority that remains locked in that capacity in such district. Otherwise stated, if there is a constitutional right vested in the members of an identifiable minority to elect, then if you take that right away from any individual member of that minority, you have denied him his constitutional right. There is no provision in our Constitution for a group franchise, so when you partite for election purposes you necessarily fix some minority elements into districts where this logic espoused dictates that they are unable to elect. It must follow then, by such argument, their constitutional right of access to the ballot for the purposes of electing has been abridged.[1]

Not only does this approach suffer as stated, but it also suffers another vice. It indelibly brands any such minority as an identifiable minority and impedes its assimilation into the fabric of American society, as others have done. In order to elect, these minorities will be required to remain in their "Soweto's", otherwise referred to as ghettoes. This is contrary to the American ethic which presumes and encourages all people to believe they are equal before the law. But more important, it denies the dream Martin Luther King expressed when he opined that he longed for the day that you can look at the nation and not see black or white.[2]

It yet suffers another vice, and that is if an identifiable minority in this instance can be found to have a constitutional right to elect, then every cognizable minority will be entitled to the same consideration. Our constitutional fabric will thus be ripped asunder and our Nation so compartmentalized that the genius of our system will be destroyed.

For these reasons I dissent, but do my duty.

## ORDER

This cause came on for hearing before the Court on July 29, 1986 for the purpose of addressing the parties' objections to the Court's June 23, 1986 districting plan and determining whether said plan complies with Section 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973.

Plaintiffs interpose no objection to the Court's plan of five single-member districts and concur in this Court's finding that:

The Court's presently proposed plan, which has the smallest maximum population deviation of all the plans proposed to date (5.13%), produces: two districts with substantial black voter majorities of 72.5% and 69.1%; one district with a substantial white voter majority of 73.6%; one district with a slight white voter majority of 57.0%; and one district with a slight black voter majority of 56.5%. This plan eliminates the at-large seat incorporated in the Court's earlier pro-

1. Dr. Lichtman tried to explain this away, but his argument does not hold water.

2. "I have a dream my four little children will one day live in a nation where they will not be judged by the color of their skin, but by content of their character. I have a dream today!" Lincoln Memorial Address on 28 August 1963.

posed plan. In contrast to the Clark Plaintiffs' plan of February 25, 1986 which split two enumeration districts and their alternate plan of April 17, 1986 which eliminated these split enumeration districts, but results in an unacceptable maximum total population deviation of nearly 13%, the Court's plan splits only one enumeration district in a readily definable manner and reduces the population deviation to a maximum of 5.13%.

This Court's order of June 23, 1986 (footnote omitted).

The defendants, Marengo County Commission (Commission) and Marengo County Board of Education (School Board), object to the Court's proposed plan on the sole ground that the plan "makes no provisions of any nature for the Chairmanship of [the Commission or School Board]" and "if the Chairman or President is to be selected from one of the five single-member district posts, the said President would not be elected by the qualified electors of the entire county." (Defendant's Response to Court's June 23, 1986 Order at p. 2). The defendants strenuously assert the existence of:

> [A] State Legislative policy respecting both defendant entities which has consistently called for the provision of a chairman of the Marengo County governing body and the Board of Education of Marengo County who is elected by the qualified electors of the entire County.

*Id.* at p. 4. Defendants further assert, as the rationale for such policy that:

> [T]he duties of the chairman, both in presiding over the Board and with regard to Administrative duties involves the government of the entire County, or governance of the County public education system and not just the affairs of the operation of said governing body or school system in any one portion of the County.

*Id.*

■ Upon careful consideration of the defendants' objection, arguments of counsel and the record in this action, the Court concludes that the Court's June 23, 1986

districting plan, as hereinafter amended to provide for the selection of a chairman by the elected members of the respective defendants' entities, is due to be adopted and implemented by this Court.

The Court agrees with the defendants that, while single-member districts have been held to be preferable to multi-member districts, the Court is not mandated to order single-member districts in all instances. Recently, the Eleventh Circuit Court of Appeals clearly rejected such a premise in *Edge v. Sumter County School District,* 775 F.2d 1509 (11th Cir.1985) stating:

> In *Upham v. Seamon,* 456 U.S. 37, 102 S.Ct. 1518, 71 L.Ed.2d 725 (1982), the Supreme Court clearly stated that although *Conner [v. Johnson,* 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971) ] suggested single-member districts are preferable to multi-member districts, at-large districts that do not offend either the Constitution or the [Voting Rights Act] should not be rejected in the court-ordered remedy.

775 F.2d at 1511–12. The Court further agrees that judicial precedent directs this Court to consider and, if appropriate, to defer to state legislative policies, such as those promulgating at-large election schemes, when fashioning an election plan. *Upham v. Seamon,* 456 U.S. 37, 102 S.Ct. 1518, 71 L.Ed.2d 725 (1982); *Edge v. Sumter County School District, supra; Cook v. Luckett,* 735 F.2d 912 (5th Cir.1984). The Supreme Court has previously qualified this directive, however, stating:

> Among other requirements a court drawn plan should prefer single-member districts over multi-member districts, *absent persuasive justification to the contrary.*

*Wise v. Lipscomb,* 437 U.S. 535, 540, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411, 417 (1978). (Emphasis added) (Citations omitted).

Plaintiffs counter defendants' attack on the Court's plan by contending first that the Findings of Fact and Conclusions of Law entered in this action by the Eleventh Circuit, *United States v. Marengo County Commission,* 731 F.2d 1546 (11th Cir.);

*cert. denied,* 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 311 (1984), and subsequently by this Court on September 5, 1985 pursuant to remand, 623 F.Supp. 33, establish that the at-large election scheme employed in Marengo County unlawfully dilutes the voting strength of black citizens in violation of Section 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973. Plaintiffs next content that this liability ruling formed the basis of the Attorney General's February 10, 1986 refusal to preclear the defendants' proposed election plan as evidenced by the following objection specifically set forth in the rejection letter:

> [T]he proposal insists on retaining an at-large position, notwithstanding the conclusion that black citizens of Marengo County do not have a fair opportunity to participate effectively in the at-large structure.

Based on the above, plaintiffs argue that the legislative policy asserted and relied upon by the defendants, to the effect that the Chairman of their respective entities must be elected at-large, cannot be said to be a policy which "[does] not offend either the Constitution or the [Voting Rights] statute." *Edge,* 775 F.2d at 1511–12.

The Court rejects plaintiffs' invitation to hold that a liability ruling such as was entered in this case automatically dictates the eradication of all at-large seats for governing bodies. Such an interpretation of the exception set forth in *Edge, supra,* would annihilate a court's ability to examine on an ad hoc basis the totality of the circumstances presented and thereby to fashion an equitable remedy which does not intrude upon state policy any more than is necessary to meet the specific constitutional violations involved. *Upham, supra,* 456 U.S. at 42, 102 S.Ct. at 1521, citing *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971).

■ The Court has, therefore, carefully considered the defendants' characterization of the rationale underlying the legislative provision for an at-large chair, to-wit: that the duties of the Chairman are critically distinctive from those of the members of the entities, the former involving the entire county as opposed to a single portion thereof. The Court finds that in this case such a characterization is inaccurate. Excepting the duty to preside over the meetings of the respective entities, the Chairman or President of the Commission and the School Board each have "the same rights, privileges, powers and authority and [shall] perform the same duties" as the other members of the respective entities. 1923 Ala. Acts 311; 1955 Ala. Acts 184. The defendants' sole witness, Marcus Walters, Marengo County Superintendent of Education, testified that if a serious problem confronted him, he would first contact the Chairman of the School Board. Mr. Walters admitted, however, that the entire Board sets the policies under which the Superintendent operates the school system; that the Chairman has the same rights, privileges, powers and authority as the other members of the School Board; and that there was nothing to prevent the Superintendent from contacting the other members of the School Board or vice versa. The defendants have, therefore, failed to establish any persuasive justification for adding a sixth member to the County Commission or the School Board, said member to be elected at-large to serve as the Chairman/President of the respective entity. Absent special circumstances, it is clear that this Court must employ the five single-member districts it has designed.

For the reasons set forth above, it is ORDERED, ADJUDGED and DECREED as follows:

1. That the defendants, the Marengo County Commission: Aubrey L. Glass, President, and Members D.W. Holt, Grey Etheridge, Jimmie Brame, Wiley G. Stephens; the Marengo County Board of Education: Thomas N. Miller, President, and Members Joe C. Mason, Robert Tucker, Wallace Flowers, Moses Lofton; Marengo County Judge of Probate, Hon. Sammie Daniels; Clerk of the Circuit Court for Marengo County, Dwaine Sealey; Sheriff W.H. (Billy) Smith; J.C. Camp as Chairman of the Marengo County Democratic Execu-

tive Committee; and Starkey Armstead as Chairman of the Marengo County Republican Executive Committee are hereby ORDERED to conduct the elections for the members of the Marengo County Commission and the Marengo County Board of Education for the districts set forth in this Court's order of June 23, 1986, as amended by order of July 18, 1986 and herein, *infra* at paragraph 7, and in accordance with the schedule set forth in Appendix A.

2. The elections referred to in paragraph 1 of this order shall consist of a Primary Election to be held on September 23, 1986, a Primary Runoff Election to be held on October 14, 1986 and the General Election to be held on November 4, 1986. The dates set forth in Appendix A shall control the deadlines which must be established for the aforementioned elections. In the event that State officials schedule another Democratic Gubernatorial Runoff Election, defendants are granted leave to move the Court for an alteration in this election schedule and the pertinent deadlines set forth in Appendix A.

3. All steps necessary to the administration of these elections shall be taken by the responsible parties named in paragraph 1 of this Order.

4. In order to insure that the electorate will be fully appraised of the districting plan herein ordered by the Court and of pertinent election deadlines, the Marengo County Commission and the Marengo County Board of Education are hereby ORDERED to publicize the same in a manner insuring the widest circulation in the County, including but not limited to the following:

A. A map outlining the five single-member districts is to be posted at the United States Post Office and the county buildings and/or other locations highly accessible to public review in the concentrated areas of Demopolis, Linden, Thomaston, Dixon Mills, Sweet Water and Mertylewood.

B. An advertisement/news release which delineates the boundaries of the single-member districts and informs of the pertinent election deadlines is to be published in a newspaper of general circulation in Marengo County, as well as in the *Democrat Reporter,* a weekly publication circulated in Linden, and the *Demopolis Times,* a biweekly publication circulated in Demopolis. This publication shall continue for two consecutive weeks from August 11 to August 25 inclusive.

C. Announcements of the locations of maps outlining the single-member districts and lists of the pertinent election deadlines are to be made frequently during each day on radio stations available in Marengo County. Such announcements shall continue for two consecutive weeks from August 11 to August 25 inclusive. These announcements will be reinstated for the benefit of the electorate and shall continue for a one week period prior to each election—Primary, Primary Runoff and General.

5. The expense of the publication and notice ordered in paragraph 4 shall be borne by the Marengo County Commission and the Marengo County Board of Education.

6. The Marengo County Commission and the Marengo County Board of Education, together with the County election officials, are hereby ORDERED to take all necessary steps to insure that voters are identified and assigned appropriately to polling places prior to the September 11 and 18, 1986 publication of the list of qualified electors. In particular, it is ORDERED that the Hon. Sammie Daniels, Marengo County Judge of Probate and the official who is responsible for the actual conduct of the elections or the general supervision thereof, be and is hereby AUTHORIZED to redesignate and establish the precincts in Marengo County in accordance with the Court's districting plan and to establish within said new precincts such polls as will provide, in his opinion and in

accordance with the law, for an orderly election process and to hire such additional personnel and to take such other actions as maybe necessary and proper to effectuate this order. The cost of such additional personnel and other expense, if not voluntarily assumed and borne by the defendant entities, shall be taxed as costs in this litigation and thereby paid by said entities.

7. Following the election outlined above, the members of the newly constituted Marengo County Commission and Marengo County Board of Education shall elect among themselves a Chairman/President of their respective entity. The Court shall not intrude further into the legislative functions of the Commission and School Board and shall leave to the devises of each entity the responsibility to determine what, if any, rotation in the chair shall occur.

## APPENDIX A

## IMPORTANT DEADLINES IN 1986 FOR COUNTY COMMISSION AND SCHOOL BOARD ELECTIONS

| | |
|---|---|
| August 11 | Candidate qualification time begins. |
| August 22 12:00 noon | Deadline for candidate qualification. |
| August 23 | Last date for Sheriff to give notice of elections. Ala. Code § 17-7-5. Notice should include publications in both the Demopolis Times and the Democrat Reporter. |
| August 29—September 17 | Dates to apply for Absentee Ballots for Primary Election. Dates on which the qualified voters may apply to the clerk for absentee ballots. Ala. Code § 17-10-3. It would be convenient to print forms containing the information that is required of the applicants pursuant to Ala. Code § 17-10-4. |
| September 3-8 | Selection of Poll Workers. Ala. Code § 17-6-1, et seq. |
| September 11 | List of Qualified Electors to be published. The list of qualified voters, including information regarding where each is to vote, shall be published (on or about this date according to publication schedules) in both the Demopolis Times and the Democrat Reporter newspapers and such other notice as is required. Ala. Code § 17-5-10 and § 17-5-13. |
| September 12 | Last date to register as a qualified elector before the Primary Election. Last day any person can register as a qualified voter prior to the Primary Election. Ala. Code § 17-4-4. |
| September 17 | Last date to apply for Absentee Ballot for the Primary Election. Last day voter can apply for absentee ballot. Ala. Code § 17-10-3. |
| September 18 | Supplemental List of Qualified Electors to be published. This list shall indicate any corrections, additions or deletions. See September 11 above for instructions regarding publication and notice. |
| September 23 | Primary Election. |
| September 24—October 9 | Dates to apply for Absentee Ballots for the Primary Runoff Election |
| October 3 | Last date to register as a qualified elector before the Primary Runoff Election. |
| October 8 | Deadline for filing Statement of Campaign Expenditures. Candidates and/or their committee must file with the Office of Probate Judge a campaign disclosure statement associated with the Primary Election in accordance with the Alabama Corrupt Practices Act. Ala.Code §§ 17-22-9, 17-22-10 and 17-22-11. |
| October 9 | Last date to apply for Absentee Ballot for the Primary Runoff Election. |
| October 14 | Primary Runoff Election. |
| October 15-30 | Dates to apply for Absentee Ballots for the General Election. |
| October 24 | Last date to register as a qualified elector before the General Election. |
| October 29 | Deadline for filing Statement of Campaign Expenditures. Candidates and/or their committee must file with the Office of the Probate Judge a campaign disclosure statement associated with the Runoff Election in accordance with the Alabama Corrupt Practices Act. Ala.Code §§ 17-22-9, 17-22-10 and 17-22-11. |
| October 30 | Last date to apply for Absentee Ballot for the General Elections |
| November 4 | General Election |

December 4    <u>Deadline for filing Statement of Campaign Expenditures.</u> Candidates and/or their committee must file with the Office of Probate Judge a campaign disclosure statement associated with the <u>General Election</u> in accordance with the Alabama Corrupt Practices Act. Ala.Code §§ 17–22–9, 17–22–10 and 17–22–11.