UNITED STATES of America; James Clark, Jr., et al., Plaintiffs,

v.

MARENGO COUNTY COMMISSION, Marengo County, Alabama; Glass, Aubrey L., President; Holt, D.W.; Etheridge, Grey; Brame, Jimmie and Stephens, Wiley G., Commissioners; Marengo County Board of Education, Marengo County, Alabama; Miller, Thomas N., President; Mason, Joe C.; Tucker, Robert; Flowers, Wallace and Lofton, Moses, Members; Daniels, Sammie, Probate Judge; Camp, J.C., Chairman, Marengo County Democratic Executive Committee; and Armstead, Starkey, Chairman, Marengo County Republican Executive Committee; Smith, W.H. "Billy", Sheriff; Sealey, Dwayne, Clerk of the Circuit Court for Marengo County, Defendants.

Civ. A. No. 78–474–H.

United States District Court,
S.D. Alabama, N.D.

Aug. 13, 1987.

Jefferson B. Sessions, III, U.S. Atty., Mobile, Ala., J. Gerald Hebert, Civil Rights Div., Dept. of Justice, Washington, D.C., for the U.S.

J.U. Blacksher, Larry T. Menefee, Mobile, Ala., J.L. Chestnut, Jr., Selma, Ala., for plaintiffs James Clark, Jr., et al.

Cartledge W. Blackwell, Jr., Selma, Ala., for Marengo County Com'n and remaining defendants.

Hugh A. Lloyd, Demopolis, Ala., for Marengo County Bd. of Educ.

## ORDER

HAND, Chief Judge.

This cause is before the Court on a motion for an award of attorneys' fees under 42 U.S.C. §§ 1973 and 1988 filed by private plaintiffs' (Clark Plaintiffs) counsel. The motion, as amended on several occasions, seeks an award of $151,496.33, representing the sum of $69,921.55 in fees; a 100% contingency enhancement of such fees; and the sum of $11,653.23 for expenses. The defendants object to the motion on a number of grounds, including not only a challenge to the reasonableness of the figures advanced by plaintiffs' counsel and the appropriateness of the enhancement sought, but a contention that the private plaintiffs did not, in fact, prevail in this action within the meaning of 42 U.S.C. § 1988. The Court will first address the issue of who prevailed in this action.

On August 15, 1977, the private plaintiffs filed this action, Civil Action No. 77–445–H, challenging the at-large election of the members of the Marengo County Commission and the Marengo County Board of Education. On August 28, 1978, the Attorney General of the United States filed a similar action, Civil Action No. 78–474–H. The cases were consolidated on August 31, 1978 and trial proceedings were conducted in late 1978 and the early part of January, 1979. It is undisputed that both the private plaintiffs and the Government actively participated in the trial of this action. Subsequently, a decision was rendered by this Court in favor of the defendants. *Clark v. Marengo County,* 469 F.Supp. 1150 (S.D. Ala.1979). From this decision, the United States appealed and the Eleventh Circuit Court of Appeals ultimately reversed this Court's judgment and remanded the case for further proceedings. *United States v. Marengo County Commission,* 731 F.2d 1546 (11th Cir.1984). It is undisputed that the private plaintiffs did not participate in the appellate proceedings. Pursuant to the mandate of the Eleventh Circuit, this Court

ultimately rendered a decision favorable to plaintiffs relative to the liability issues on September 5, 1985. *Clark v. Marengo County,* 623 F.Supp. 33 (S.D.Ala.1985). Subsequently, this Court implemented a districting plan and ordered elections under said plan. *United States v. Marengo County Commission,* 643 F.Supp. 232 (S.D.Ala.1986). The latter decisions of this Court have now been affirmed by the Eleventh Circuit. *Clark v. Marengo County,* 811 F.2d 610 (11th Cir.1987).

The defendants admit that the challenge to the at-large election systems of Marengo County by the plaintiffs was successful in all respects. The defendants contend, however, that this success was achieved solely through and by the efforts of the Government on appeal which resulted in a reversal of this Court's decision in favor of the defendants. The defendants, therefore, seek to characterize only the Government as the prevailing party in this action.

■ The defendants' attempt to relieve themselves of the burden imposed by 42 U.S.C. § 1988,[1] even if made as purported to spare the citizens they represent, is unavailing. The defendants cannot seriously contend that the Government did not represent the interests of the private plaintiffs during the appellate proceedings. Nor could the defendants deny that had the private plaintiffs actively participated in the appellate proceedings, such participation might now be questioned as duplicative. Defendants intimate as much by their following criticism:

> There remained [after reversal by the Eleventh Circuit] the issue of fashioning a remedy. The United States was still actively litigating the case, and throughout the entire case there were at least two to three Justice Department attorneys jointly doing the work and attending all hearings and trials, accompanied on a number of occasions by one, and sometimes two experts. Chestnut, Blacksher and Menefee operated in this

---

1. Section 1988 provides in pertinent part:
 In any action or proceeding to enforce a provision of … [42 U.S.C. §§ 1981–1983, 1985, 1986] … the Court, in its discretion, may allow the *prevailing party, other than the United States,* a reasonable attorney's fee as part of the costs.
 42 U.S.C. § 1988 (emphasis added).

scenario representing the private plaintiffs in connection with the same issues and matters to which the United States addressed itself and in the same context. (Defendant's Brief at p. 5). Defendants simply cannot have their cake and eat it too, as the saying goes. The defendants must recognize that the private plaintiffs spared the defendants further expense by permitting the Government, for whom no attorney's fees could be assessed, to prosecute what constituted a critical appeal in this action.

Defendants' remaining objections relate principally to the reasonableness of the fees and expenses sought and may be addressed within the context of the factors delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). As to such factors, the Court has carefully considered the private plaintiffs' motion, the defendants' response in opposition thereto, the supporting and opposing affidavits and depositions and the record as a whole. Based upon such consideration, and for the reasons set forth below, the Court concludes as follows:

1. J.L. Chestnut, Jr. is entitled to receive the sum of $22,390.75 as a reasonable attorney's fee;

2. Larry T. Menefee is entitled to receive the sum of $16,842.00 as a reasonable attorney's fee;

3. James U. Blacksher is entitled to receive the sum of $20,498.40 as a reasonable attorney's fee;

4. The firm of Blacksher, Menefee & Stein should be compensated for expenses incurred in the amount of $11,585.03; and

5. The firm of Chestnut, Sanders, Sanders, Turner, Williams & Pettaway should be compensated for expenses incurred in the amount of $68.20.

## JOHNSON FACTORS ANALYZED

### I. *Time and Labor*

#### A. *J.L. Chestnut, Jr.*

Mr. Chestnut asserts that he expended 231.35 hours in relation to this action. This time includes 196.35 hours expended on the merits of the case and 35 hours expended on litigating the award of an attorney's fee.

The Court, in a chronological manner, will address the items for which Mr. Chestnut seeks fees and as to which either the defendants specifically object or the Court questions based on the record, including the deposition of Mr. Chestnut. First at issue is 6.5 hours on 7/1/77 identified as "Original conference with clients in Demopolis & Linden (Travel time included.)" (Chestnut Affidavit of October 15, 1986). According to Mr. Chestnut's deposition testimony, the travel time referred to constituted 2 of the 6.5 hours claimed on that occasion. (Chestnut Deposition at p. 42). The Court will address defendants' contention that travel time ought to be compensated at a different rate than actual legal work in conjunction with the factor addressing customary fees.

■ The Court next questions the reasonableness of the following items for which Mr. Chestnut seeks fees solely from these defendants:

| Date | Description | Hours |
|---|---|---|
| 7/13/77 | Research | 8.0 |
| 8/10/77 | Research & draft of complaint | 10.0 |
| 8/11/77 | Research & draft of complaint | 10.0 |

(Chestnut Affidavit of October 15, 1986). According to Mr. Chestnut's deposition testimony, he filed the complaint in this action on or about the same date he filed a similar case in Dallas County and Hale County, Alabama. (Chestnut Deposition at p. 21).

Mr. Chestnut further testified, with specific respect to the 26 hours of research and drafting the complaint, as follows:

> I'm saying that [the Dallas and the Hale County suits]—once the research was done in the Marengo County suit I didn't

have to go back and repeat it in [the Dallas and the Hale County suits].
(Chestnut Deposition at p. 44). In light of Mr. Chestnut's admission and the contemporaneousness of the virtually identical actions filed in Dallas and Hale counties, the Court has no choice but to apportion the research and complaint drafting time in this case. To do otherwise would be to unfairly burden these defendants and ultimately the citizens they represent with costs not associated with this litigation. The Court, therefore, concludes that of the 26 hours sought it is reasonable to assess 8.7 hours against these defendants. *See, Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 51 (1983) (Hours that are not properly billed to one's client also are not properly billed to one's adversary).

■ Despite defendants' protestations to the contrary, there is no evidence to support the contention that the 25 hours claimed for witness and trial preparation from October 1 to 22, 1978, either included travel time or were unreasonable in general. Defendants' objections on these grounds, therefore, are without merit. The Court also finds, although taken slightly out of sequence, that defendants' objection to an item identified as "Study and review of order and districting plan" and constituting 4 hours incurred on July 1, 1986, is likewise without merit. This item obviously refers to this Court's order and proposed districting plan of June 23, 1986 and not to the preclearance proceedings involving the defendants' districting plan as contended by the defendants. The item is, therefore, reasonable and properly charged.

■ Defendants' objection to 2 hours identified on December 12, 1985 as "Conference with Joe Reed regarding adding new legal counsel" (Chestnut Affidavit of October 15, 1986), however, has merit and will be sustained. Mr. Chestnut apparently contends that defendants' objection to this item ought to be overruled because they have failed to adequately explain their objection. Such a contention, however, ignores the fact that Mr. Chestnut himself has failed to explain this time log entry, i.e., the necessity of conferring with a nonparty regarding the retention of additional counsel, and that he has failed, therefore, to establish his entitlement to compensation for these 2 hours. *See, e.g., Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

Defendants' remaining objection is directed at Mr. Chestnut's claim of entitlement to compensation for 10 hours on October 10, 1986 for "Review of the file for time notations and costs." (Chestnut Affidavit of October 15, 1986). Contrary to Mr. Chestnut's contentions, defendants do not challenge the hours as excessive, but contend that the appropriate rate of compensation for these hours should be less than the rate allowed for professional services rendered on the merits of the case. The Court will address defendants' contention in conjunction with its discussion of the customary rate factor.

■ Finally, the Court finds that the 16 hours claimed by Mr. Chestnut to have been incurred on April 30, 1987 in conjunction with the drafting of his response in opposition to the defendants' aforementioned objections, (Chestnut Affidavit of April 1, 1987), is clearly excessive. The Court finds reasonable, and therefore will allow, only 8 hours of this claimed item. The Court notes particularly the lack of any evidence of extensive legal research relative to Mr. Chestnut's brief which might increase this Court's estimation of the hours reasonably incurred in the preparation of this response. The only case law cited by Mr. Chestnut in his May 1, 1987 response brief was that set forth and relied upon by defendants in their April 24, 1987 brief and no effort was made to distinguish or otherwise explain the applicability of such case law.

In summary, therefore, the Court finds and concludes that Mr. Chestnut reasonably expended 204.05 hours in relation to this action. This time includes 175.05 hours reasonably expended on the merits of the case, 2 hours expended in travel and 27 hours reasonably expended on litigating the award of an attorney's fee.

## B. *Larry T. Menefee*

Mr. Menefee asserts that he expended 154.89 hours in relation to this action. This time includes 153.19 hours expended on the merits of the case and 1.7 hours expended on litigating the award of an attorney's fee. Mr. Menefee did not enter an appearance on behalf of the private plaintiffs until February 26, 1985, during the remedy phase of this litigation.

■ At the outset, the Court must reduce the sum of hours claimed by 3.60 hours because of an obvious duplication of time charged for 01/10/86, 01/13/86 and 01/14/86. (Menefee Affidavit of October 10, 1986 at p. 1 of time log for 01/01/86 to 09/10/86). The duplication is obviously a typographical error, but was incorporated into the final computation of hours.

Of the hours claimed, defendants first object to 25.7 hours allegedly expended by Mr. Menefee challenging defendants' proposed districting plan during the Section 5 preclearance proceedings before the Attorney General. Defendants specifically assert that time spent in connection with the preclearance process is not compensable unless, in substance, the private plaintiffs demonstrate that but for their intervention, the Attorney General would not have reached his decision to deny the preclearance. *See, e.g., Posada v. Lamb County, Texas,* 716 F.2d 1066 (5th Cir.1983).

Clark plaintiffs' counsel admit that the 25.7 hours at issue were expended by Mr. Menefee in connection with the preclearance process. Counsel, however, argue that by definition the preclearance proceedings are directly related to this litigation and that private plaintiffs' intervention had a direct bearing on the outcome of the

litigation in that the Attorney General relied expressly on the Clark plaintiffs' arguments and their alternative plan in concluding that preclearance of defendants' proposed plan should be denied.

■ It would appear that, under certain circumstances, compensation for time spent in connection with administrative proceedings, such as those involved in the preclearance process, is permissible. The standard applicable to the Court's consideration is whether the work sought to be compensated was " 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. ——, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439, 454 (1986), quoting in part *Webb v. Board of Education of Dyer County,* 471 U.S. 234, 243, 105 S.Ct. 1923, 1929, 85 L.Ed.2d 233, 242 (1985). Compensation remains, however, within the sound discretion of the Court. *Pennsylvania,* 106 S.Ct. at 3096.

Mr. James U. Blacksher, specifically argues, on behalf of Mr. Menefee as well as himself, that under the rule of *McDaniel v. Sanchez,* 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981), the plan proposed by these defendants for inclusion in this Court's remedy was required to be submitted first for preclearance and thus the preclearance proceedings were by definition directly related to the litigation. The Court at this junction must reiterate the concern it expressed earlier in this litigation regarding the propriety of requiring a legislative body which is a defendant in a voting rights action in which the Department of Justice appears as a plaintiff to submit a proposed districting plan to the Department of Justice for preclearance.[2]

**2.** As this Court stated in its order of January 10, 1986:

> The Justice Department assumes the position of plaintiff in this action and yet remains in a position to pass final judgment on the defendants' proposed remedy. In no other area of litigation is such an obvious conflict of interest tolerated or is a single party given such authority to control the proceedings of litigation.
> The Court is convinced that unless the Government's objections are addressed, defendants' plan is unlikely to obtain Justice

> Department approval. Yet it is equally clear the Government refuses to articulate its objections and thereby facilitate the fashioning of an election plan likely to meet with its approval. The logic and efficacy of proceeding in such a manner escapes the imagination. The Court fails to conceive how uniformity, the asserted congressional intent of section 5 preclearance, is enhanced by the Government's insistence on preclearance in this case when it is obviously aware that the defendants' plan will not be approved in its present

As the Court predicted, the defendants' plan as then proposed was incapable of passing section 5 muster. The Court recognizes, however, in light of its earlier expression of concern regarding the dual role of the Justice Department in this litigation, that the Clark plaintiffs may have felt compelled to assert themselves in the preclearance process to offset the appearance of impropriety. The Court must state, however, that it remains unpersuaded that any participation by private plaintiffs can negate the obvious impropriety of the Justice Department's dual role in voting rights actions.

Mr. Blacksher further argues that the Clark plaintiffs' participation in the preclearance proceedings had a direct bearing on the Attorney General's decision to deny preclearance. Mr. Blacksher's argument is apparently premised on the Attorney General's reference to "[a]n alternative plan submitted on behalf of black citizens for the county's consideration" and assertion that "black citizens of the county repeatedly have requested the opportunity for input in the plan-drawing process but the submitted plan was devised without input from representatives of the black community." (Attorney General's February 10, 1986 letter to defendants). No other evidence, however, has been proffered to illustrate the manner or extent of the Clark plaintiffs' alleged participation in the preclearance process. Mr. Menefee merely sets forth the following description of the time at issue:

| DATE | DESCRIPTION OF SERVICES | TIME |
|---|---|---|
| 12/02/85 | research defendant plan | 0.90 |
| 12/05/85 | research re defendants' proposed plan, confer with Justice | 1.30 |
| 12/10/85 | t w/Chestnut, Hebert and study plan, letter to court | 1.40 |
| 12/16/85 | t w/court and confer with justice dept., research re alternate plan | 1.30 |
| 12/17/85 | research and confer re defendant plan and alternatives thereto | 1.20 |
| 12/18/85 | research re plaintiff alternative plan and develop critique of defendant's plan | 1.60 |
| 12/19/85 | research and draft response | 1.20 |
| 12/20/85 | research McDaniel and prepare objections | 2.40 |
| 12/23/85 | research and draft objections, t w/Voyles and Hebert | 2.40 |
| 12/26/85 | research re response to defendant plan, confer with client | 1.80 |
| 01/01/86 | research and draft response to defendant plan | 3.20 |
| 01/02/86 | research, draft, proof response to defendant's plan, confer with witnesses, prepare subpoenas | 3.40 |
| 01/10/86 | research, draft brief and letter | 2.20 |
| 01/13/86 | t w/Justice Department re submission, research | 0.80 |
| 01/14/86 | t w/Justice Department and research | 0.60 |

(Menefee Affidavit of October 10, 1986). The record is otherwise devoid of any evidence of what documents, other than perhaps their proposed plan, or arguments were presented by the Clark plaintiffs to the Attorney General.

At first blush, the Court is inclined to disallow the entire 25.7 hours sought by Mr. Menefee based upon counsel's admission that these hours were "devoted to administrative proceedings" (Blacksher Brief of May 1, 1987 at p. 9) and failure to proffer any evidence regarding what spe-

posture and that, consequently, the Court will be required to develop its own districting plan.

(Order of January 10, 1986 at p. 2).

cifically constituted Clark plaintiffs' participation in the preclearance process. This Court cannot exercise its discretion wisely in the absence of evidence supporting entitlement to compensation.

█ The Court, however, has independently considered the above delineated time log of Mr. Menefee, together with that portion of this Court's record which corresponds in time. Based upon such consideration and the Court's recollection of the course of events, the Court finds, despite Clark plaintiffs' failure to so argue, that much of the work described by Mr. Menefee correlates with not only this Court's order of December 11, 1985 which required the parties to critique the defendants' proposed districting plan, but with the hearing conducted January 6, 1986 relative to the parties' objections.[3] The only work which does not so correlate is that performed on 01/10/86, 01/13/86 and 01/14/86 constituting 3.6 hours. The Court, therefore, concludes that Mr. Menefee is entitled to compensation for 22.1 hours of the 25.7 hours set forth above.

Defendants' remaining objection to Mr. Menefee's fee request relates primarily to the appropriate rate of compensation for travel time. It would appear that of the 4.5 hours claimed by Mr. Menefee on 04/08/86, 3.5 hours involved travel. Although the amount of travel time was not delineated as to 6.7 hours expended on 01/05/86, Mr. Menefee does state that the time includes "travel to Selma" and the Court will thus assume that again such travel involved 3.5 hours. In addition, the following entry on Mr. Menefee's time log appears to include travel time:

| DATE | DESCRIPTION OF SERVICES | HOURS |
|---|---|---|
| 04/28/86 | meet with R. Clark re VAP data travel (½ charge) | 6.8 |

(Menefee Affidavit of October 10, 1986). The Court must assume that "R. Clark" refers to one of the named private plaintiffs and that Mr. Menefee's reference to travel indicates that he again traveled to Selma. The Court will assume, therefore, that of this 6.8 hours claimed, 3.5 hours involved travel. The Court does not understand Mr. Menefee's notation of "½ charge", but finds it may indicate his recognition that travel time is often compensation at a rate less than that charged for actual legal services. The Court, as stated previously in connection with Mr. Chestnut, will discuss the appropriate rate of compensation in due course. One other entry on Mr. Menefee's time log appears to relate to his attendance at an evidentiary hearing held in Selma on 07/29/86, but does not indicate or delineate travel time. In light of Mr. Menefee's consistent practice of at least indicating that he is seeking compensation for travel, the Court will not assume that he has here incorporated such time in the 8.7 hours he claims on that date.

In summary, therefore, the Court finds and concludes that Mr. Menefee reasonably expended 147.69 hours in relation to this action. This time includes 131.99 hours expended on the merits of the case, 14 hours expended in travel and 1.7 hours reasonably expended on litigating the award of an attorney's fee.

### C. *James U. Blacksher*

Mr. Blacksher asserts that he expended 186.8 hours in relation to this action. This time includes 106.9 hours expended on the merits of the case and 79.9 hours expended on litigating the award of an attorney's fee. Mr. Blacksher did not enter an appearance on behalf of the private plaintiffs until March 6, 1986, during the remedy phase of this litigation.

█ Defendants raise only two objections regarding Mr. Blacksher's request for fees. The first relates to a claim for 18

---

3. The Court also finds that some of Mr. Menefee's work correlates with Clark plaintiffs' submission of an alternative districting plan. The Court disagrees with defendants' contention that such time is uncompensable.

minutes expended on 03/06/86 for "Fon con law clerk/conf Menefee re plaintiffs' plan." (Blacksher Affidavit of October 17, 1986). As stated previously, Mr. Blacksher admits in his brief of May 1, 1987 that this time was "devoted to administrative proceedings," but argues that it is compensable. Based upon such admission and the absence of evidence illustrating the character of the Clark plaintiffs' participation in the administrative proceedings, the Court is inclined to disallow the claimed 18 minutes. The Court, however, is willing to give Mr. Blacksher the benefit of the doubt in that this rather de minimis item is described as "Fon con law clerk/conf Menefee re plaintiffs' plan" (Blacksher Affidavit of October 17, 1986) and appears as the first entry on his time log. Mr. Blacksher was certainly entitled to be briefed on the status of the litigation at the time of his first involvement with the litigation.[4] The Court overrules the defendants' objection.

■■■ Defendants' remaining objection is directed at 12.8 hours, and assumed but unidentified expenses, allegedly expended by Mr. Blacksher in connection with an "Emergency Motion for Injunctive Relief on Writ of Mandamus to Enforce the Mandate of the Court of Appeals in May of 1986." (Defendants' Brief of April 24, 1987 at p. 10). Defendants object on the ground that the Eleventh Circuit denied the motion and writ summarily shortly after its filing. Mr. Blacksher responds by asserting that:

> [E]ven though that motion was denied, the time invested was fully recovered in the briefing process for the appeals in chief; that is, it was not necessary for Mr. Blacksher again to survey the record on appeal and prepare statements of proceedings below when he prepared appellee's brief.

(Blacksher Brief of May 1, 1987 at p. 11). Inasmuch as defendants do not argue that

Clark plaintiffs' participation in defendants' last appeal of this cause was in any manner duplicative and no evidence of record supports such a premise, the Court will accept Mr. Blacksher's contention that the time invested was in fact ultimately recovered.[5] Consequently, the Court overrules the defendants' objection.

The Court, therefore, finds and concludes that Mr. Blacksher reasonably expended 186.8 hours in relation to this action. This time includes 106.9 hours reasonably expended on the merits of the case and 79.9 hours reasonably expended on litigating the award of an attorney's fee.

II. *Novelty and Difficulty of Issues Presented*

■■■ Contrary to the defendants' contention, this vote dilution case did involve certain novel and difficult liability questions in its earlier stages principally due to the substantive developments in vote dilution case law which occurred during the course of this litigation. The novelty and complexity of the liability issues, however, are fully reflected in the number of hours found by this Court to be reasonably expended by Mr. Chestnut and "do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates." *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891, 902 (1984).

■■■ In contrast, the Court would not characterize the remedy phase of this litigation as particularly novel although, of necessity, it was time consuming and somewhat difficult. .Contrary to the Clark plaintiffs' contentions, the Court's adoption of a districting plan comprised solely of single-member districts with population ratios which coincided with Clark plaintiffs' proposal did not, nor was it intended to, establish a fixed rule of law regarding either the number and size of majority black districts

---

**4.** The Court recognizes that, if objections are sustained, challenged items in a fee application may cummulatively constitute a substantial sum. The Court, however, must admit its aversion to participating in a process which appears to involve a constant nickle and diming of the petition.

**5.** The Court emphasizes that the recovery of time invested by Mr. Blacksher here differs from Mr. Chestnut's attempt to assert recovery of time invested relative to research and complaint drafting in two unrelated cases.

or the appropriateness of at-large seats in a remedial plan. The Court specifically rejected plaintiffs' argument that a violation of Section 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973, automatically dictates the irradication of all at-large seats for governing bodies. *Marengo County*, 643 F.Supp. at 235. In addition, despite the Court's finding that its proposed plan constituted a fair and equitable remedy under the particular circumstances of this case, the Court did and does not accept plaintiffs' arguments regarding the number and size of black majority districts.

### III. *Skill Requisite to Perform the Service Properly*

Considerable skill and knowledge were required by counsel to achieve effective relief in this voting rights action. Clark plaintiffs' counsel were suitably skilled to properly provide the necessary legal services.

### IV. *Preclusion of Other Employment*

Mr. Blacksher and Mr. Menefee do not contend that their participation in this litigation precluded or adversely impacted upon their ability to accept other employment. In contrast, Mr. Chestnut contends:

> My law firm, and this counsel in particular, suffer the image as "a civil rights law firm." Many solvent black business people and middle class blacks refuse to employ our firm for fear of being viewed as "militant" or worse.

(Chestnut Brief of May 1, at p. 10).

The Court first observes that a distinction must be drawn between this "preclusion" factor and the "undesirability" factor which will be addressed shortly. According to *Johnson*, the "preclusion" factor involves:

> [T]he dual consideration of otherwise available *business which is foreclosed because of conflicts of interest* which occur from the representation, and the

fact that once the employment is undertaken the *attorney is not free to use the time spent on the client's behalf for other purposes.*

488 F.2d at 718 (emphasis added). In contrast, the "undesirability" factor involves a determination of whether an attorney's decision to undertake a civil rights case has economically impacted on his practice because, as a result of his decision, he "is not pleasantly received by the community or his contemporaries." 488 F.2d at 719.

In light of this distinction, the Court must find that the expenditure of approximately 205 hours by Mr. Chestnut during the course of this litigation had some adverse impact upon his ability to accept other work. Any impact, however, would not have been substantial as evidenced in part by Mr. Chestnut's assertion that, since the commencement of this litigation, he was retained by and settled "a contract case" for Foodway Grocers, Inc. and currently represents "Selma Apparel" and that:

> My practice is headquarted [sic] in Selma but ranges over the State and beyond its borders. We maintain a full time office in Birmingham. I represent national civil rights organizations and litigate cases in federal appellate courts and the United States Supreme Court. After almost thirty (30) years of trial work, I demand and collect higher fees than the Dallas and Marengo County Bars even in nonspecialized cases.

(Chestnut Motion to Strike of April 23, 1987 at p. 2, ¶¶ 2 and 3.) As stated previously, Mr. Chestnut also participated, inter alia, in vote dilution cases involving Dallas and Hale counties during the initial phase of this litigation.

### V. *Customary Fee*

Upon review of the affidavits and depositions submitted by both the Clark plaintiffs and the defendants in this case,[6]

6. In addition to their own counsel's affidavits which set out the various times spent on each pleading and proceeding, Clark plaintiffs filed depositions of two Mobile attorneys, Arthur Madden and Thomas Troy Zieman. Mr. Madden initially testified that in the Mobile area the "going rate" for "commercial civil litigation" in the federal trial and appellate courts would be $125.00 and up an hour. (Madden Deposition at pp. 8–9). At another point during his testimo-

the Court finds that an appropriate customary fee (if the matter were billed at an hourly rate) for the work performed on the merits of the case by the Selma counsel, Mr. Chestnut, would range from $60.00 to $100.00 per hour. The range for similar work performed by the Mobile counsel, Mr. Menefee and Mr. Blacksher, would be from $95.00 to $135.00 per hour. The Court, therefore, finds that the $120.00 per hour fee requested by Mobile counsel, Mr. Blacksher and Mr. Menefee, as it relates to the time expended on the merits of the case is a reasonable fee according to the customary fee charged for civil rights litigation. The Court does not, however, find that Mr. Chestnut had adequately substantiated his contention that a rate of $125.00 per hour is a reasonable fee according to the customary fee charged for civil rights litigation or other relatively complex litigation by the

Selma and Dallas County Bar.[7] Consequently, the Court finds that a fee of $100.00 per hour, the outer limits of a range provided by the testimony of defendants' deponents, is a reasonable fee for the time Mr. Chestnut expended on the merits of this case.

 As to the time expended by counsel on other than the merits of the case, the Court is of the opinion that a differentiation of rates is appropriate. *See, e.g., Flowers v. Wiley,* 675 F.2d 704 (5th Cir. 1982); *Society for Goodwill to Retarded Children, Inc. v. Cuomo,* 574 F.Supp. 994 (E.D.N.Y.1983); *Dunten v. Kibler,* 518 F.Supp. 1146 (N.D.Ga.1981); *Preston v. Mandeville,* 451 F.Supp. 617 (S.D.Ala. 1978). The Court first concludes that the base rate for travel time should not exceed 50% of the reasonable hourly rate charged

---

ny, however, Mr. Madden refers to a case in which he participated and prevailed on appeal of the attorney's fee award. (Madden Deposition at pp. 25–26). The case apparently was *Watkins v. Mobile Housing Board,* 632 F.2d 565 (5th Cir. Unit B 1980) in which plaintiff sought an hourly rate of $45.00 and appealed from a reduction by the trial court of the hours claimed to have been expended by counsel, not of the hourly rate. Mr. Madden also refers to "the IP case" which was settled without judicial intervention in 1985 to include an attorney's fee of $95.00 per hour. (Madden Deposition at p. 27). Mr. Madden further testified that he has never done any legal work on a contract basis charging $120.00 per hour, but that he was then handling "a fairly complicated estate matter and I'm billing that at [$110.00 per hour]." (Madden Deposition at pp. 32–33). Mr. Zieman testified that in the Mobile area the normal range for "complex litigation in federal courts ... is somewhere from [$115.00] an hour to perhaps [$135.00] an hour." (Zieman Deposition at p. 12). Mr. Zieman further testified that the rate in a contingent litigation would be higher because "you're not assured that you will be paid unless you win." (Zieman Deposition at p. 15). Both Mr. Madden and Mr. Zieman testified that the rate of $120.00 per hour sought by Clark plaintiffs' Mobile counsel was reasonable. Despite Mr. Madden's and Mr. Zieman's contention that the $125.00 per hour rate sought by Mr. Chestnut was also reasonable, these attorneys admitted that they had never met Mr. Chestnut and were not personally familiar with the range of customary fees charged in Selma, Alabama. (*See e.g.,* Madden Deposition at p. 18; Zieman Deposition at p. 22).

Defendants, in their turn, filed depositions of two Selma attorneys, William J. Gamble and J.

Garrison Thompson. Mr. Gamble testified that the hourly rate charged in the community of Selma and Dallas County ranges from $60.00 an hour to $85.00 an hour "for trial work and trial preparation." in non-contingent cases. (Gamble Deposition at p. 12). Mr. Gamble apparently conceded that the rate might be higher for contingent litigation (Gamble Deposition at p. 27). Mr. Gamble further testified that he believed that a tax attorney in his firm on occasion charged in excess of $100.00 an hour for handling complicated tax matters. (Gamble Deposition at p. 28). Mr. Thompson testified that in the Selma and Dallas County area the normal range of hourly rate is $50.00 to $80.00 an hour. (Thompson Deposition at p. 9). Mr. Thompson also testified that on one occasion he charged $100.00 an hour for work involving an estate matter. (Thompson Deposition at p. 12). Mr. Gamble and Mr. Thompson each admitted that they were not familiar with the customary fee charged in the Mobile area. (Gamble Deposition at p. 30; Thompson Deposition at p. 19). Both Mr. Gamble and Mr. Thompson testified that they believed the $125.00 per hour rate sought by Mr. Chestnut was excessive.

7. Contrary to Mr. Blacksher's contention, the fact that on occasion a proceeding in this litigation was conducted in Mobile as opposed to Selma is irrelevant. The Supreme Court has held that "'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates *in the relevant community.*" *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891, 900 (1984). This cause was filed and chiefly prosecuted in Selma, Alabama by Selma attorney J.L. Chestnut. The standard to be applied relative to Mr. Chestnut's services is the prevailing market rate in Selma, Alabama.

by counsel for time expended on the merits. *See, e.g., Cuomo,* 574 F.Supp. at 998. Consequently, the Court finds that a fee of $50.00 per hour is a reasonable fee rate for the two hours of travel time expended by Mr. Chestnut and that a fee of $60.00 per hour is a reasonable fee rate for the 14 hours of travel time expended by Mr. Menefee.

■ The Court also concludes that the base rate for time spent on litigation of an attorney's fee award should be less than that allowed for professional services rendered on the merits. The base rate for such time should not exceed 80% of the reasonable hourly rate charged for time expended on the merits. *See, e.g., Flowers,* 675 F.2d at 707. Consequently, the Court finds that a fee of $80.00 per hour is a reasonable fee rate for the 27 hours expended by Mr. Chestnut relative to litigating the attorney's fee issue and that a fee of $96.00 per hour is a reasonable fee rate for the combined 81.6 hours similarly expended by Mr. Blacksher and Mr. Menefee.

## VI. *Contingent Fee*

Mr. Chestnut undertook this action on a contingent fee basis. He has received no compensation from his clients during the litigation and would never have been compensated had his clients not prevailed.

Mr. Menefee and Mr. Blacksher did not appear as counsel until, respectively, February 26, 1985 and March 6, 1986. Although these attorneys seek to establish for themselves a risk of nonpayment similar to that assumed by Mr. Chestnut, by suggesting that this Court had not rendered its liability judgment until after their appearance, (Blacksher Brief of May 1, 1987 at p. 16), the Court is unpersuaded that these attorneys appeared for purposes other than to render assistance in the antic-

ipated remedy phase of this litigation. This Court entered its judgment against the defendants on September 5, 1985 following post-remand hearings conducted on March 6, 7, and 8, 1985. Neither Mr. Blacksher nor Mr. Menefee participated during this time in the post-remand proceedings.[8] The plaintiffs had thus prevailed in this litigation, and as prevailing parties were assured of obtaining reasonable attorney's fees, prior to the active participation of Mobile counsel. In addition, it appears that the Alabama Democratic Conference had agreed to underwrite the expenses associated with drawing up plaintiffs' proposed alternative districting plans. (Blacksher Brief of May 1, 1987 at p. 16). Clark plaintiffs' counsel, therefore, assumed no risk of nonpayment for these expenses at the commencement of the remedy phase of this litigation.

■ Clark plaintiffs' counsel request an enhancement bonus of 100% because of the contingent nature of their fees. As set forth above, the Court finds, inter alia, that no risk of nonpayment of fees existed with respect to Mobile counsels' participation in the remedy phase of this litigation. The Court, therefore, concludes that Mobile counsel are not entitled to an enhancement based on contingency. *See, Pennsylvania v. Delaware Valley Citizens Council For Clean Air,* —— U.S. ——, 107 S.Ct. 3078, 3086, 97 L.Ed.2d 585 (1987) (Blackmun, J. dissenting) (It is the actual risk or burdens that are borne by the lawyers that determine whether an upward adjustment is called for.)

The Court recognizes that in *Pennsylvania, supra,* five members of the Supreme Court authorized consideration of the contingent nature of the fee to determine whether enhancement of fees is appropriate. As the dissent emphasized:

---

**8.** Mr. Menefee's time log indicates only two items prior to the entry of this Court's judgment of September 5, 1985:

| DATE | DESCRIPTION OF SERVICES | HOURS |
|------|-------------------------|-------|
| 02/26/85 | t. w/co-counsel and justice department | 0.90 |
| 03/04/85 | t. w/Justice Department and draft affidavit and research re compliance | 1.90 |

[A] court's job simply will be to determine whether a case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment.

*Pennsylvania,* 107 S.Ct. at 3098 (Blackmun, J. dissenting). It is undisputed that Mr. Chestnut undertook this case on a contingency basis. The Court finds, however, that Mr. Chestnut was in part able to mitigate his risk of nonpayment by imploring the Justice Department to come into the litigation. (*See, e.g.,* Chestnut Deposition at pp. 13, 53, 56, 63). Mr. Chestnut admitted that some of his concerns about incurring out-of-pocket expenses for which he would risk nonpayment were alleviated when the Justice Department came into the lawsuit. (Chestnut Deposition at pp. 13, 56). Mr. Chestnut was not able, however, to mitigate the risk of nonpayment associated with his personal compensation. Finally, the Court finds, however, that the contingent nature of Mr. Chestnut's fees in this litigation did not pose such economic risks to him as would justify an enhancement bonus of 100%. Mr. Chestnut is not a sole practitioner or a member of a small firm which could not offset the risks assumed here. *See, e.g., Pennsylvania,* at 3088 (Blackmun, J. dissenting). In addition, the delay in payment suffered by Mr. Chestnut has been reconciled in part by this Court's decision to compensate Mr. Chestnut at current hourly rates.

 In light of the above, the Court concludes that Mr. Chestnut's request for an enhancement bonus of 100% is clearly unreasonable. The Court finds, however, that Mr. Chestnut is entitled to an enhancement bonus of 15% for the 175.05 hours he expended on the merits of the case due to the unmitigated contingent nature of that portion of his fee. The Court does not believe that a contingency allowance is proper for the hours Mr. Chestnut spent in travel or in litigation of his motion for attorney's fees. *See, e.g., Flowers, supra,* 675 F.2d at 707.

## VII. *Time Limitation Imposed by the Circumstances*

Contrary to Mr. Chestnut's rather generalized contentions, the Court is unaware of any priority work in this case which delayed Clark plaintiffs' counsel with respect to other legal work.

## VIII. *Results Obtained*

 There were no damages sought or awarded in this case, but plaintiffs' counsel did succeed in obtaining declaratory and injunctive relief. As stated previously, this Court cannot accept defendants' contention that the Government alone was the prevailing party in this action. That is not to say that the Justice Department's contributions to this litigation or its results were insignificant. Quite to the contrary, the Justice Department was indispensable to the plaintiffs' success.[9] The Government's indispensability, however, does not obviate the fact that the Clark plaintiffs initiated this action and, with the Government, have obtained the full relief requested in the original complaint: (1) a declaration that the at-large election scheme employed in Marengo County unlawfully dilutes the voting strength of black citizens in violation of Section 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973; and (2) an order requiring elections for the members of the Marengo County Commission and the Marengo County Board of Education under a districting plan whereby the county was divided into five single-member districts. The quality of Clark plaintiffs' representation and the degree of success they achieved with the assistance of the Justice Department are adequately reflected in the hourly rates previously deemed reasonable by this Court. Consequently, the Court finds that no upward adjustment of this

---

**9.** The fact that the Government alone prosecuted the critical appeal in this action, even if it did so while representing the interests of the

reasonable hourly rate is justified in this case.[10]

### IX. *Experience, Reputation and Ability of the Attorneys*

The Court has had considerable experience (in open court and in other court proceedings, including in-chamber conferences) with Clark plaintiffs' counsel and is familiar with the experience, reputation and ability of each attorney. The Court finds that each of Clark plaintiffs' counsel is an extremely capable attorney who is justifiably held in high esteem, particularly in the fields of civil rights and voting rights litigation. The experience, reputation and ability of each attorney supports an hourly rate in the upper range of the current customary rate for noncontingent legal services in their respective communities. Compensation at this level ought, in this Court's opinion, to make representation of voting rights plaintiffs' attractive to counsel skilled in complex federal court litigation.

### X. *Undesirability of the Case*

■ The Court is aware that this litigation attracted some attention in the local media and that the action was unpopular to some in Marengo County. This case was, by its subject matter, an undesirable case in the eyes of most lawyers in Marengo County and Mobile. Even today, unfortunately, the representation of civil rights plaintiffs may impose some stigma upon an attorney and may deter other fee-generating work. The Court concludes, however, that this litigation cannot be deemed undesirable to Clark plaintiffs' counsel inasmuch as each attorney clearly specializes in litigation of this kind and routinely accepts this kind of employment. Consequently, this factor does not require either a diminution or an enhancement of the fee award in this case.

### XI. *Nature and Length of Relationship with Clients*

There is no evidence before the Court to the effect that Mobile counsel has had a longstanding professional relationship with the named private plaintiffs. In contrast, Mr. Chestnut admits that he has had "a longstanding legal and political relationship with several of the named private plaintiffs." (Chestnut Brief of May 1, 1987 at p. 12). The Court finds, even as to Mr. Chestnut, that this factor neither requires a diminution nor an enhancement of the fee award in this case.

### XII. *Awards in Similar Cases*

An award of $100.00 per hour enhanced by 15% to Mr. Chestnut and $120.00 per hour to Mr. Blacksher and Mr. Menefee, for time expended on the merits of the case, is reasonable in light of awards in similar cases. *See, e.g., Talton v. City of Selma,* Civil Action No. 80–0271–H (S.D. Ala. January 14, 1986) [Available on WEST-LAW, DCT database] ($75.00 per hour, no enhancement); *Turner v. Webster,* Civil Action No. 85–P–0157–W (N.D.Ala. December 19, 1986) [Available on WESTLAW, DCT database] ($115.00 per hour; no enhancement); *Bolden v. City of Mobile,* Civil Action No. 75–107–P (S.D.Ala. December 12, 1983) ($90.00 per hour; enhancement of 100%). *See also, Foster v. Board of School Commissioners of Mobile County,* Civil Action No. 80–0460–H (S.D.Ala. December 26, 1985, as amended December 27, 1985) ($115.00 and $95.00 per hour; enhancement of 30%); *Hall v. Board of School Commissioners of Mobile County,* Civil Action No. 79–0117–H (S.D.Ala. June 20, 1983) ($75.00 per hour; no enhancement); *Hall v. Board of School Commissioners of Conecuh County,* 707 F.2d 464 (11th Cir.1983) ($85.00 per hour; enhancement of 50%); *Johnson v. University College of the University of Alabama in Bir-*

---

private plaintiffs, renders it an indispensable party in terms of the success achieved.

**10.** Clark plaintiffs' counsel have offered no evidence "to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates

charged and that the success [associated with their individual participation] was 'exceptional.'" *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891, 902 (1984), citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*mingham,* 706 F.2d 1205 (11th Cir.1983) ($65.00 per hour; remanded to reconsider contingency of 10%).

## EXPENSES AND PARALEGAL FEES

In addition to an award of attorneys' fees, Clark plaintiffs seek compensation for expenses in the amount of $11,585.03 incurred by the firm of Blacksher, Menefee & Stein (Mobile firm) and $68.20 incurred by the firm of Chestnut, Sanders, Sanders, Turner, Williams & Pettaway (Selma firm). Clark plaintiffs, by amendment filed on October 30, 1986, also request compensation for paralegal expenses incurred in the amount of $210.00, representing seven hours expended at a $30.00 per hour rate.

The only specific objection raised by the defendants challenges the expense incurred by the Mobile firm in connection with the preparation of Clark plaintiffs' proposed districting plans.[11] Defendants apparently contend that, in addition to the sum of $6,262.22 billed on January 30, 1986 by the Alabama Democratic Conference (ADC) for the drafting of Marengo County districting plans, Clark plaintiffs seek a sum of $1,262.22 billed on January 15, 1986 by an individual, Mr. Jerry Wilson. Defendants' contention of duplicity is clearly without merit. Clark plaintiffs seek compensation only for the sum of $6,262.22 billed by the ADC. *See, e.g.,* Menefee Affidavit of October 10, 1986 (expense items delineated). It would appear that the ADC bill of January 30, 1986 incorporates, although not by reference, Mr. Wilson's bill of January 15, 1986. Certainly, Clark plaintiffs do not delineate any other expense item that would conceivably include an additional sum of $1,262.22.

■ Defendants further contend that the expense incurred in connection with the preparation of Clark plaintiffs' proposed

districting plan is, in any event, not compensable. Such a contention is clearly frivolous. *See, e.g., Dowdell v. City of Adopka,* 698 F.2d 1181, 1191 (11th Cir.1983), citing *Fairley v. Patterson,* 493 F.2d 598, 607 (5th Cir.1974) (costs of developing a reapportionment plan held recoverable). There can be little doubt that the Clark plaintiffs' proposed districting plan greatly assisted the Court in arriving at an equitable remedy in this action. Consequently, the Court concludes that the sum of $6,262.22 is recoverable.

■ Defendants have interposed no other objections to the expenses, including paralegal fees,[12] for which Clark plaintiffs seek compensation, and this Court finds that these expenses are completely recoverable. *See, e.g., Dowdell, supra,* 698 F.2d at 1191–92. Consequently, Clark plaintiffs are entitled to recover expenses in the amount of $11,863.23.

## CALCULATION OF THE AWARD

For the reasons stated above, the Court concludes that Clark plaintiffs' counsel are entitled to compensation for the following time reasonably expended in relation to this litigation.

| | | |
|---|---|---|
| Mr. Chestnut: | 175.05 hours on the merits | |
| | 2.00 hours in travel | |
| | 27.00 hours on attorney's fee motion | |
| Total | 204.05 hours | |
| Mr. Menefee: | 131.99 hours on the merits | |
| | 14.00 hours in travel | |
| | 1.70 hours in attorney's fee motion | |
| Total | 147.69 hours | |
| Mr. Blacksher: | 106.90 hours on the merits | |
| | 79.90 hours on attorney's fee motion | |
| Total | 186.8 hours | |

The Court also concludes that for the hours expended on the merits of the case, a rate of $120.00 per hour for Mr. Blacksher and Mr. Menefee and a rate of $100.00 per hour for Mr. Chestnut is reasonable and

---

11. Defendants do raise an objection to certain expenses "presumably" incurred in connection with plaintiffs' emergency motion for injunctive relief in the Court of Appeals. (Defendants' Brief of April 24, 1987 at p. 10). However, defendants fail to identify the expenses they presume to relate to this unsuccessful emergency motion and the Court is unable to discern evidence in the record to substantiate defend-

ants' objection. The Court finds that the expenses claimed by the Mobile firm were reasonable in light of the proceedings conducted before this Court alone.

12. The Court specifically finds that compensation for paralegal service at a rate of $30.00 per hour is reasonable and recoverable in this case.

will fully compensate said attorneys. As to the time expended by counsel on other than the merits of the case, the Court concludes that the attorneys are entitled to 50% of the aforementioned base rate for time expended in travel and 80% of the aforementioned base rate for time expended in relation to the motion for attorneys' fees. The lodestar figure for each attorney is thus calculated as follows:

| | HOURS | HOURLY RATE | | FEE |
|---|---|---|---|---|
| Mr. Chestnut: | 175.05 | $100.00 | | $17,505.00 |
| | 2.00 | 50.00 | | 100.00 |
| | 27.00 | 80.00 | | 2,160.00 |
| | | | Total | $19,765.00 |
| Mr. Menefee: | 131.99 | 120.00 | | $15,838.80 |
| | 14.00 | 60.00 | | 840.00 |
| | 1.70 | 96.00 | | 163.20 |
| | | | Total | $16,842.00 |
| Mr. Blacksher: | 106.90 | 120.00 | | $12,828.00 |
| | 79.90 | 96.00 | | 7,670.40 |
| | | | Total | $20,498.40 |

---

In addition to the lodestar figure, the Court concludes that Mr. Chestnut is entitled to a contingency enhancement of 15% relative only to the 175.05 hours he expended on the merits of this litigation. Consequently, Mr. Chestnut is entitled to a contingency enhancement of $2,625.75 in addition to his fee of $19,765.00, or a total fee of $22,390.75.

It is, therefore, ORDERED, ADJUDGED and DECREED that defendants, jointly and severally, pay reasonable attorneys' fees and expenses to Clark plaintiffs' counsel, respectively, as follows:

| | |
|---|---|
| Mr. Chestnut | $22,390.75 |
| Mr. Menefee | 16,842.00 |
| Mr. Blacksher | 20,498.40 |
| Blacksher, Menefee & Stein, PA | 11,585.03 |
| Chestnut, Sanders, Sanders, Turner, Williams & Pettaway, PC | 68.20 |
| TOTAL | $71,384.38 |

It is FURTHER ORDERED that interest on the award of attorneys' fees and expenses be allowed from the date of this order at the legal rate of 6.98%.