**Dr. Elizabeth Ann MARTIN, et al., Plaintiffs,**

v.

**UNIVERSITY OF SOUTH ALABAMA, et al., Defendants.**

Civ. A. No. 75–0473–BH.

United States District Court, S.D. Alabama, S.D.

May 5, 1989.

Gregory B. Stein & Henry Brewster, Robert S. Edington, Wanda J. Cochran, Mobile, Ala., Larry T. Menefee, James U. Blacksher, Birmingham, Ala., for plaintiffs.

Mitchell G. Latoff & J. Cecil Gardner, Maxey J. Roberts, Mobile, Ala., for defendants.

## MEMORANDUM OPINION AND ORDER

HAND, Senior District Judge.

This cause comes before the Court on the objections of both plaintiffs' counsel and defendants' counsel as to the Special Master's Report on Plaintiffs' Application For Award of Attorneys' Fees. After reviewing the aforementioned objections, the briefs submitted in support thereof, the responses thereto, the Special Master's Report, and the record as a whole, the Court makes the following determinations:

### STANDARD OF REVIEW

The findings of fact made by the Special Master must be accepted by the Court unless clearly erroneous. Fed.R.Civ.P. 53(e)(2). *N.L.R.B. v. Crockett–Bradley, Inc.*, 598 F.2d 971, 975 (5th Cir.1979). A party objecting to the findings of the Special Master carries the burden of proving said findings to be clearly erroneous. *Oil, Chemical and Atomic Workers International Union, AFL–CIO v. N.L.R.B.*, 547 F.2d 575, 580 (D.C.Cir.1976).

.... [T]he mere fact that a finding is supported by substantial evidence does not prevent its being overturned if the reviewing court.... is left with the definite and firm conviction that a mistake has been committed.... [T]he clearly erroneous standard applies even to findings based on documentary evidence or inferences from undisputed facts.... However, a master's conclusions of law are entitled to no special deference from the reviewing court, and will be overturned whenever they are believed to be erroneous. [Citations omitted].

*Id.*

### HOURLY RATE

 Counsel for the defendants objects to the findings of the Special Master as to the reasonable noncontingent hourly rate awarded to counsel for the plaintiffs.[1] Defense counsel contends that such awards are contrary to the evidence presented. However, the Court is of the opinion that such awards are contrary *to the intent of Congress* as to what constitutes a reasonable attorney's fee.

The award of attorneys' fees is made pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988, which provides that in federal civil rights actions "the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs."

The purpose [of the act is] to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed ... [C]ivil Rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

\*　　\*　　\*　　\*　　\*　　\*

Congress recognized [the need for awarding attorneys' fees] when it made specific provision for such fee shifting in Titles II and VII of the Civil Rights Act of 1964:

When a plaintiff brings an action ... he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced

---

1. The Special Master recommended that Messrs. Blacksher, Menefee and Stein be compensated at an hourly rate of $150.00; that Mr. Edington be compensated at an hourly rate of $135.00; that Mr. Brewster be compensated at an hourly rate of $115.00; and that Ms. Cochran be compensated at an hourly rate of $105.00.

to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the Federal courts ...

The idea of the "private attorney general" is not a new one, nor are attorneys' fees a new remedy. Congress has commonly authorized attorneys' fees in laws under which "private attorneys general" play a significant role in enforcing our policies ... [F]ees are an integral part of the remedy necessary to achieve compliance with our statutory policies ...

S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5909–10. Congress stressed the importance of the plaintiff's attorney's role as that of a "private attorneys general" bringing good faith actions to vindicate fundamental rights. *Id.,* at 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News, at 5912. Therefore, Congress intended that the standards for awarding fees to be generally the same as those under the fee provisions of the Civil Rights Act of 1964. *Id.,* at 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News, at 5912.

As to the amount of fees awarded, Congress intended that such amount be governed by "the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." *Id.,* at 6, *reprinted in* 1976 U.S.Code Cong. & Admin.News, at 5913. Computation of the fee should be conducted as is "traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Id.* (citing *Davis v. County of Los Angeles,* 8 E.D.P. ¶ 9444 (C.D.Cal. 1974), and *Stanford Daily v. Zurcher,* 64 F.R.D. 680, 684 (N.D.Cal.1974)). Likewise, fees should be adequate to attract competent counsel, *yet should not produce windfalls to attorneys. Id.* (Emphasis added.)

In calculating a reasonable attorney's fee, Congress recognized as the appropri-

ate standards, those factors set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974).[2] *Id.* These factors are: (1) time and labor required; (2) novelty and difficulty of the questions; (3) the skill requisite to perform legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

Upon reviewing the Special Master's application of each of these factors to the case at bar, the Court fails to find any clear error. However, the Court finds that the Special Master relied too heavily on testimony regarding the "going rate" within the community in determining a reasonable hourly rate. The Court cannot concur in the final results reached by the Special Master, for the twelve *Johnson* factors alone are not the only factors for determining a reasonable attorney's fee. The *Johnson* Court stated that they were not attempting to reduce the calculation of a reasonable fee to mathematical precision. *Id.* at 720. Furthermore, the Court issued this *caveat:*

[C]ourts must remember that they do not have a mandate ... to make the prevailing counsel rich. Concomitantly, the Section [awarding attorney's fees] should not be implemented in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general. The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of [civil rights] litigation.

---

**2.** These *Johnson* factors are similar to those recommended by the American Bar Association's Code of Professional Responsibility, Ethi- cal Consideration (EC) 2–18 and Disciplinary Rule (DR) 2–106. *Id.* at 719.

*Id.* at 719. Therefore, this Court shall consider more than the aforementioned *Johnson* factors in its search for a reasonable attorney's fee.

A recent interpretation of Congress' intent as to what constitutes a reasonable attorney's fee was submitted in *Burke v. Keenum,* Civil Action No. 288–067, 1989 WL 14681 (S.D.Ga. Feb. 21, 1989).[3] In delivering the opinion of the Court, Judge Anthony A. Alaimo stated that ...

> [i]n view of current events of national magnitude and impact, of which the Court takes note, the question of what constitutes a "reasonable fee" pursuant to fee-shifting statutes ... must be reviewed. The Court, as always, must be exquisitely sensitive and alert to signals from Congress about its "intent" respecting matters legislated by it. Accordingly, it becomes imperative to consider what Congress currently means by the term "reasonable attorney fees."
>
> Turning to recent events, the Court has perceived that, by an overwhelming majority vote of both Houses, the Congress has placed its imprimatur on current judicial compensation. The Court looks to this fact as the latest expression of congressional intent as to Congress' meaning of appropriate legal compensation which, of course, Congress would certainly rate no higher than the "prevailing" judicial compensation in this District. Constrained by such congressional expression, this Court will calculate attorney fees in accordance with the rate at which federal judges are compensated. Remuneration for trial judges has been at the rate of approximately $45 per hour ($89,500 divided by 2,000 hours). The Court finds it appropriate to augment this base rate by 50% for overhead expenses and, consequently, will award fees at the rate of $67.50 per hour for case and administrative time. Proportional adjustments provide for an award of $33.75 per hour travel time and $20.25 per hour for paralegal time.

*Id.* (Citations and footnotes omitted). The Court noted that it was not intimating what it viewed as a reasonable fee or as the prevailing fee in the market place, but that it was only fulfilling its Constitutional obligation to follow what it perceived to be a Congressional mandate. *Id.,* at n. 8. The Court further advised that "[t]he Bar's complaints and its advocacy, if any, should be addressed to Congress." *Id.*

The reasoning of Judge Alaimo is substantiated somewhat by the aforementioned *caveat* of *Johnson, supra:* i.e., that the awarding of attorneys' fees should be such as to make the private attorney general's position so lucrative as to ridicule the public attorney general. *Id.* at 719.

Incorporating this *caveat,* this Court is compelled to examine the salary of the Attorney General of the United States and his subordinates. The Court's research reveals that the Attorney General receives an annual salary of $99,500. 5 U.S.C. §§ 561, 5307 and 5332. The United States Attorney receives an annual salary not in excess of $77,500. General Schedule Pay Chart, *Weekly Federal Employees Digest,* Vol. 38, # 6 (Sept. 5, 1988). The salary of Assistant United States Attorneys ranges from $23,800 to $65,800. *Id.* In light of the *caveat* of *Johnson, supra,* the Court is of the opinion that these figures should also be "factored in" in the Court's discretionary computation of the reasonable attorney fee due private attorneys general.[4]

Further indicia of Congressional intent as to what constitutes a reasonable attorney's fee when performing apparent *pro bono* work are demonstrated in fees established pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, and those awarded in Social Security cases. Congress created the Legal Services corporations to further assist those citizens who might be oppressed by society. Although the Court is aware a mechanical use of the rate within the Criminal Justice Act, *supra,* is improper in determining the amount of attorneys'

---

**3.** 1989 U.S.Dist.Lexis 1666.

**4.** By computing the hourly rate as Judge Alaimo did in *Burke, supra,* but substituting the salaries of the Attorney General and his subordinates for that of the Federal Judges, the Court derives an hourly rate ranging from $17.85 to $74.63.

fees to be awarded under § 1988 [5] (and therefore, does not attempt to do just that in this case), the Court is nevertheless of the opinion that Congress obviously considered a fee of $60.00 to $75.00 to be adequate to secure sufficient numbers of attorneys to fulfill this perceived need. Indeed, Ralph Nader has opined that the woods are full of lawyers willing to undertake public service for amounts substantially less than that which Congress pays judges. Clearly this indicates that Congress is well aware that it is not necessary for citizens to obtain the most expensive of lawyers in a given community in order to obtain competent counsel to vindicate their civil rights. Therefore, the fees properly should not, as aforestated, embarrass the pay of the Attorney General.

The Court is mindful that the extent of a plaintiff's success is a crucial factor in determining the proper amount of award of attorney's fees. *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed. 2d 40 (1983). However, consideration of this factor was given in determining the attorneys' fees award for the underlying action. *See* Order of July 26, 1982 (Tab # 348). The Court does not opine that protecting the judgment on appeal equates the success of obtaining that judgment on the underlying action. Consequently, the fees awarded in the underlying action should not necessarily be binding on the determination of fees to be awarded for protecting the judgment of said underlying action on appeal.

The above premises considered, the Court is of the opinion that the recommendation of the Special Master as to the hourly rate to be awarded is due to be SET ASIDE, and that awarding Messrs. Blacksher, Menefee, Stein and Edington a fee of $75.00 per hour is reasonable. As Mr. Brewster and Ms. Cochran do not purport to be the professional equivalent of the aforementioned, and as their participation was significantly less than that of the others, they shall be awarded a fee of $70.00 per hour. These awards are for

hours expended on the merits of this case. Time expended on the attorneys' fees issues shall be compensated at 80% of the awarded rate, and time expended on travel shall be compensated at 50% the awarded rate.

ENHANCEMENT

■ The Special Master recommends that an enhancement of the attorneys' fees by fifty percent (50%) is appropriate for this case. Counsel for the plaintiffs objects that such an enhancement is too low, and suggests that an enhancement ranging from 100% to 300% is appropriate. This objection is based upon testimony presented to the Special Master by various attorneys and others represented to be knowledgeable of the subject. Conversely, counsel for the defendants objects that the suggested enhancement is too great and should be no more than that given to plaintiffs' counsel by this Court in *United States v. Marengo County Commission,* [6] fifteen percent (15%).

The Court may not enhance a fee award any more than is necessary to bring the fee within the range that would attract competent counsel. *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 3091, 97 L.Ed.2d 585 (1987) (O'Conner, J., concurring). Furthermore, no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk, the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market. 483 U.S. at ——, 107 S.Ct. at 3089. The aforementioned "risk" is to be determined from the outset of the litigation, and should be based on the likely response of the bar to the case's pretrial merits, rather than on the judge's subjective opinion of the merits. 483 U.S. at —— n. 11, 107 S.Ct. at 3088 n. 11.

In applying this standard to the case at bar, this Court finds that the mere protracted nature of the litigation in no way serves as a basis for determining the legal risks involved. As to the ability of the

---

**5.** *See King v. Greenblatt,* 560 F.2d 1024 (1st Cir.1977).

**6.** 667 F.Supp. 786 (S.D.Ala.1987).

plaintiff to find competent counsel to take on such a case, the Court disagrees with plaintiffs' counsel's assertion that this type of case is undesirable. On the contrary, the Court agrees with the argument of defendants' counsel that after the initial ruling in favor of the plaintiffs, competent legal counsel would have been readily available to take over the case at that point. Consequently, the risks associated with this post-judgment litigation were established at its outset, and such risks certainly may not now be determined to have been greater than the risks associated with the litigation of the main case. Therefore, since, in July of 1982, Judge Pitman determined that an enhancement of the attorneys' fees by twenty-five percent (25%) was appropriate, the Court concludes that an enhancement of attorneys' fees for services rendered during the post-judgment litigation, *if any such enhancement is due at all,* may not exceed twenty-five percent (25%).

Enhancements are appropriate "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed. 2d 891, 902 (1984). As to these post-judgment proceedings, there has been no such showing, so an enhancement of any multiple would be inappropriate. *See Fiacco v. City of Rensselaer,* 663 F.Supp. 743 (N.D. N.Y.1987) (holding that no upward adjustment is appropriate with respect to award of attorneys fees incurred during successful appeal). Consequently, the recommendation of the Special Master as to enhancement of attorneys' fees is SET ASIDE, and no such enhancement shall be calculated into the award of said fees.

## EQUAL PAY ACT CLAIMS

■ Defendants' counsel objects to the Special Master's recommendation that counsel for the plaintiffs be compensated for time expended on claims arising under the Equal Pay Act, claims upon which plaintiffs did not prevail on appeal.[7] As a basis for this objection, defendants' counsel employs the ruling set out in *Hensley, supra.* There the Court stated that the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. "The result is what matters." *Id.* However, in cases where plaintiffs present distinctly different claims based on different facts and legal theories, work on unsuccessful claims cannot be deemed as having been "'expended in pursuit of the ultimate result achieved.'" 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore, no fee may be awarded for services on the unsuccessful claim." *Id.*

The Court is of the opinion that the appeal of the Equal Pay Act claim was not related to the underlying claims, but was merely presented in furtherance of appellate strategy. Therefore, it must be treated as though it had been raised in a separate lawsuit. Since plaintiffs did not prevail on this unrelated issue, then no fee may be awarded for services rendered in furtherance thereof on appeal. Consequently, the recommendation of the Special Master as to the Equal Pay claim is SET ASIDE, and plaintiffs' counsel shall not be compensated for time spent on appeal of that issue.[8]

The other objections of defendants (compensation and enhancement thereof for travel time) are treated above in the discussion of the reasonable hourly rate. As to

---

7. The appeal from the denial of the intervention was brought as a cross-appeal, which plaintiffs' counsel, Mr. Menefee testified was a strategic maneuver made in an effort to protect the judgment and which would not have been brought had defendants not appealed.

8. The record reveals that Mr. Menefee devoted eight (8) hours and Mr. Stein devoted two (2) hours to the Equal Pay Act intervention question.

defendants' objections as to expenses incurred as a result of deposing plaintiffs' expert witness, the Court invokes its Standing Order Relative to the Taxation of Costs Under Federal Rule of Civil Procedure 54(d), which states:

The Clerk may tax the cost of an original deposition upon the written representation of counsel for a party claiming the cost that a substantial portion of the deposition was admitted in evidence on the trial of the case.

The record reveals that said depositions were admitted into evidence. Therefore, defendants' objection as to taxation of costs incurred from the taking of these depositions is OVERRULED.

CONCLUSION

The above premises considered, the Court awards attorneys' fees as follows:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| James Blacksher | | | |
| merits | 24.0 | $75.00 | $ 1,800.00 |
| atty fee | 24.0 | 60.00 | 1,440.00 |
| travel | 0.0 | 37.50 | .00 |
| TOTAL | —— | —— | $ 3,240.00 |
| Larry Menefee | | | |
| merits | 873.1 | $75.00 | $ 65,482.50 |
| atty fee | 14.9 | 60.00 | 894.00 |
| travel | 19.0 | 37.50 | 712.50 |
| TOTAL | —— | —— | $ 67,089.00 |
| Gregory Stein | | | |
| merits | 558.1 | $75.00 | $ 41,857.50 |
| atty fee | 15.5 | 60.00 | 930.00 |
| travel | 0.0 | 37.50 | .00 |
| TOTAL | —— | —— | $ 42.787.50 |
| Robert Edington | | | |
| merits | 9.5 | $75.00 | $ 712.50 |
| atty fee | 0.0 | 60.00 | .00 |
| travel | 0.0 | 37.50 | .00 |
| TOTAL | —— | —— | $ 712.50 |
| Henry Brewster | | | |
| merits | 52.5 | $70.00 | $ 3,675.00 |
| atty fee | 0.0 | 56.00 | .00 |
| travel | 0.0 | 35.00 | .00 |
| TOTAL | —— | —— | $ 3,675.00 |
| Wanda Cochran | | | |
| merits | 4.2 | $70.00 | $ 294.00 |
| atty fee | 0.0 | 56.00 | .00 |
| travel | 0.0 | 35.00 | .00 |
| TOTAL | —— | —— | $ 294.00 |
| TOTAL ATTORNEYS' FEES: | | | $117.798.00 |

Expenses shall be awarded as follows: