Dr. Elizabeth Ann MARTIN, and Dr. Wilma M. Scrivner, Plaintiffs–Appellants,

Dr. Phyllis K. Benson, Plaintiff,

v.

UNIVERSITY OF SOUTH ALABAMA, Frederick P. Whiddon, etc., et al., Defendants–Appellees.

No. 89–7408.

United States Court of Appeals, Eleventh Circuit.

Sept. 10, 1990.

Larry T. Menefee and Gregory B. Stein,
Henry Brewster, Stein and Brewster, Rob-

ert S. Edington, Mobile, Ala., for plaintiffs-appellants.

Mitchell G. Lattof, Sr., Lattof & Gardner, P.C., Mobile, Ala., for defendant-appellee University of South Alabama.

Before COX, Circuit Judge, HILL [*] and SMITH [**], Senior Circuit Judges.

EDWARD S. SMITH, Senior Circuit Judge:

Counsel for the prevailing plaintiffs in a civil rights class action contend that the district court erred when, in computing the lodestar for the award of post-judgment attorneys' fees under 42 U.S.C. § 1988, it (1) rejected the hourly rate determined by a Special Master and substituted an hourly rate based on the salary of federal district judges; and, (2) determined that time expended on the attorneys' fee issue should be compensated at 80% of the rate awarded for work on the merits of the case. 713 F.Supp. 381. The district court also set aside the Master's recommended enhancement and held that plaintiffs' counsel had failed to prove affirmatively that enhancement was necessary to engage competent counsel for the post-judgment phases of the litigation. We reverse the district court's judgment in part because no clear error was shown in the Master's lodestar calculation. However, we find that the Master's lodestar was adequate to compensate the fee applicants for their post-judgment work; accordingly, the portion of the district court judgment concerning enhancement is affirmed. The case will be remanded for re-calculation of fees in light of the conclusions reached herein.

---

[*] See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Claims were stated under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Equal Pay Act, 29 U.S.C. § 206; and Title IX

*Background*

In October 1975 plaintiffs Dr. Elizabeth Ann Martin and Dr. Wilma Scrivener filed a class action against the University of South Alabama and its Board of Trustees.[1] The complaint alleged that the trustees and officers of the University discriminated against women on the faculty and women seeking appointment to the faculty on the basis of their sex. The court approved a preliminary consent decree in January 1978 which set up faculty committees to pair each female faculty member with her nearest male counterpart. The qualifications of each pair were compared based on several factors, including experience, degree, and comparable department. Each class member was awarded the difference between her salary and that of her male counterpart as back pay. The decree also required that the University adopt an affirmative action plan, appoint an affirmative action officer, and include women on various committees. Unfortunately, apart from the back pay procedure, the Decree provided no mechanism for resolving individual disputes.

During the years 1978 to 1982 a Special Master conducted hearings on the claims of each class member as provided in the Consent Decree. In 1982 counsel for plaintiffs moved for an award of attorney's fees and costs under the provisions of 42 U.S.C. § 1988.[2] The district court considered the fee request in light of the testimony of local attorneys called by plaintiffs' counsel and the factors of *Johnson v. Georgia Highway Express.*[3] The court looked to the then prevailing non-contingent local fees and calculated a lodestar figure of $85 per hour; the lodestar was then adjusted upward with a 25% enhancement bonus.

In discussing the reasonableness of the fee arrangement the district judge first

---

of the Education Amendments of 1972, 20 U.S.C. § 1681.

2. The provision provides in pertinent part: "... the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs." 42 U.S.C. § 1988 (1982).

3. 488 F.2d 714 (5th Cir.1974).

considered potential drain on law firm resources caused by the complexity and protracted nature of such a civil rights class action. In calculating the enhancement multiplier the court noted that plaintiffs' attorneys in the Mobile area generally obtained approximately one third of the class recovery in complex contingent fee litigation. The court concluded that fee enhancement was necessary to realize the congressional purpose of attracting competent counsel to represent plaintiffs in civil rights litigation: "Any fee less than that awarded by the court today would send a signal that protection of constitutional and civil rights is less important than the compensation for personal injuries or for injury to economic interest. That simply is not the law or the policy expressed by Congress." [4]

After this court affirmed both the back pay awards calculated under the Consent Decree and the award of attorney fees,[5] beginning in May 1984 plaintiffs filed a series of contempt motions to compel compliance with the affirmative action provisions of the Consent Decree. From 1986 through early 1988 discovery ensued on plaintiffs' contempt motions and on the back pay claims of certain additional class members. On June 13, 1988, one day prior to the scheduled hearing date before a Special Master, the parties reached a settlement on all issues except attorney fees.

On July 25, 1988 the Special Master held a hearing on plaintiffs' § 1988 motion for post-judgment attorney fees earned between April 1982 and July 1988. Defendant offered no witnesses and introduced one exhibit, an affidavit indicating the hourly rates it had paid its counsel during the litigation. Plaintiffs' evidence produced on the fee issue consisted primarily of testimony by seven attorneys, four of which were plaintiffs' counsel. All plaintiffs' witnesses testified that the pool of attorneys qualified to litigate civil rights class actions is gradually declining; many of the southeastern lawyers formerly engaged in civil rights work have reduced their practice in the area or simply have left the field entirely. The witnesses also testified concerning the non-contingent hourly rates charged in the state of Alabama (primarily Birmingham and Mobile) by practitioners with the same experience as plaintiffs' counsel: for senior counsel $140 to $200 per hour, and for junior counsel $100 to $110 per hour. Plaintiffs' counsel then introduced a survey showing the range of non-contingent rates charged by similarly experienced attorneys for comparable complex litigation. Fees reported in the survey ranged from a high of $165 per hour for senior counsel to a low of $95 per hour for less experienced junior counsel. Finally, the witnesses testified concerning the relevant market compensation for contingency. The testimony indicated that lawyers prosecuting complex litigation on a contingent fee basis in the Mobile and Birmingham areas recover fees ranging from $200 to $600 per hour. The witnesses concluded that an enhancement beyond the ordinary non-contingent hourly rate would be required to attract competent federal court litigators to complex civil rights class actions and to compensate such professionals for the loss of traditional fee paying clients.

On the basis of the above evidence the Master sought to determine the reasonableness of plaintiffs' counsels' claimed fees and costs. The analysis consisted of a two step process. First, the lodestar, a fact-based constant derived by multiplying the reasonable hours spent on the case by a reasonable hourly rate, was calculated according to the twelve factors in *Johnson*. Based on the testimony and survey produced by plaintiffs the reasonable non-contingent hourly rate for civil rights lawyers in the relevant market (Alabama) was found to be $135 to $150 per hour for senior counsel and $105 to $115 per hour for junior counsel.

---

**4.** Opinion and Order on Plaintiff's Application for Attorney's Fees, *Martin v. Univ. of S. Ala.,* No. CV 75–473–P (S.D.Al.1982), at 22. ("1982 Order")

**5.** 725 F.2d 692 (11th Cir.1984).

Next the lodestar figure was adjusted upward in accord with the guidelines set forth in *Pennsylvania v. Delaware Valley Citizens' Council (Delaware Valley II).*[6] The master determined that the facts and circumstances of the case warranted a 50% lodestar enhancement. The enhancement was awarded principally in an effort to ensure that complex civil rights litigation would remain attractive to qualified counsel in the Southeast. The master found that, absent enhancement, the Congressional policy to attract competent lawyers for civil rights cases would not be fulfilled. According to the master, a failure to award the enhancement would undoubtedly step up the increasingly rapid exodus of civil rights attorneys from the southeastern market.

Both plaintiffs and defendants filed objections to the Special Master's report. Defendants' counsel contended that the calculation of the reasonable hourly rate was contrary to the evidence, and suggested a rate of $120 per hour for senior counsel and $85 per hour for junior counsel. Plaintiffs counsel claimed that the Master's enhancement was too low, and based on the hearing testimony proposed an enhancement level from 100% to 300%. Conversely, counsel for the defendants proposed that the 15% enhancement awarded to plaintiffs' counsel in an earlier case[7] was more appropriate. In a memorandum opinion[8] the district judge set aside the Master's report and recommendations, substituting his own findings as to hourly rate and enhancement. Plaintiffs' counsel appeal.

*Standard of Review*

■ As noted by the district judge in his memorandum opinion and order, the findings of fact made by a Special Master must be accepted by the district court unless clearly erroneous.[9] The district court also correctly noted that the party objecting to the findings of the Special Master carries the burden of proving such clear error.[10] It is also well settled that a master's conclusions of law may be reviewed independently by the district court judge.[11]

■ The issue of the proper standard for appellate review of a decision of a district court which rejects findings of a master before whom the evidence was heard is less well settled. The prevailing precedent in this circuit indicates that we must review the findings of the Special Master and affirm the district court only if we also deem the Master's findings clearly erroneous.[12] However, in carrying out this procedure we must remain mindful of the district court's role in the appellate process: in reviewing any factual findings adopted or made by the district court, we must comply with Rule 52(a). We are evaluating the district court's decision on the objections to the master's report, not the district court's substitute factual findings; therefore, we must first review, as a matter of law, the correctness of the district court's decision to set aside any factual findings made by the master.[13] If that decision survives legal scrutiny, we must then review any substitute or additional findings made by the district court under the clearly erroneous standard of Rule 52(a).[14]

6. 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

7. *United States v. Marengo County Comm'n,* 667 F.Supp. 786 (S.D.Ala.1987).

8. 713 F.Supp. 381 (S.D.Ala.1989).

9. 713 F.2d at 382; *citing* Fed.R.Civ.P. 53(e)(2); *N.L.R.B. v. Crockett–Bradley, Inc.,* 598 F.2d 971, 975 (5th Cir.1979); *See also Archambault v. United Computing Sys., Inc.,* 786 F.2d 1507, 1511–12 (11th Cir.1986).

10. 713 F.2d at 382; *citing Oil, Chem. & Atomic Workers Int. Union v. N.L.R.B.,* 547 F.2d 575,

580 (D.C.Cir.1976). *Accord Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.),* 622 F.2d 709, 723 (5th Cir.1980).

11. 713 F.Supp. at 382; *citing Atomic Workers,* 547 F.2d at 580. *See also Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317, 321 (5th Cir. Unit A June 1981).

12. *In re Multiponics, Inc.,* 622 F.2d at 722.

13. *Milliken Research Corp. v. Dan River, Inc.,* 739 F.2d 587, 592–93 (Fed.Cir.1984).

14. *Id.* at 593.

I. Non–Contingent Fee

A. *Hourly Rate*

In its opinion setting aside the Master's hourly rate recommendation the district court concluded that while it found no clear error in the calculated rate, the award was nevertheless wrong as a matter of law and "contrary to the intent of Congress as to what constitutes a reasonable attorney's fee." [15] In seeking to explain its decision, the court engaged in a three step process of deductive reasoning.

First, the court noted that in the legislative history of the Civil Rights Attorney's Fee Awards Act of 1976 Congress stressed the importance of the plaintiff's attorney's role as that of a "private attorney general", bringing good faith actions to vindicate fundamental rights.[16]

The court then stated that the twelve *Johnson* factors are not the sole criteria for determining a reasonable attorney fee and held that the Special Master "relied too heavily on testimony regarding the "going rate" within the community in determining a reasonable hourly rate." [17] The court quoted from the Fifth Circuit's opinion in *Johnson:* "[C]ourts must remember that they do not have a mandate ... to make the prevailing counsel rich. Concomitantly, [§ 1988] should not be implemented in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general." [18]

Finally, in search of the proper basis for calculating fees, the court adopted the rationale of *Burke v. Keenum.*[19] In that case the district judge found that Congress' refusal to raise the pay of federal

judges was in fact its latest expression of what a reasonable attorney fee should be.[20] As discussed in *Burke,* the salaries of federal judges were applied to determine the base fee rate to which the civil rights attorneys were entitled. The court factored in the salaries of the U.S. Attorney General and the United States Attorney as well to calculate a rate of $75 per hour for senior counsel and $70 per hour for junior counsel. The court concluded that these rates would be more than adequate to insure a sufficient supply of competent counsel for civil rights litigation because "Ralph Nader has opined that the woods are full of lawyers willing to undertake public service for amounts substantially less than that which Congress pays judges." [21]

In the present case the Special Master made specific findings of fact on the appropriate non-contingent hourly rates generally charged by practitioners in the Alabama market. These findings were based on virtually uncontroverted testimonial and survey evidence, so the rates determined may be considered prima facie reasonable.[22] The evidence was properly interpreted to calculate a range of reasonable attorney fees to compensate both junior and senior counsel.

The determination of a reasonable hourly rate is a finding of fact reviewable under the clearly erroneous standard.[23] There has been no showing that the Master's findings of fact were clearly erroneous, so we hold that the district court erred as a matter of law in not accepting the Master's findings on the non-contingent fee rate. Indeed, neither the district court opinion nor the appellee's brief makes any

**15.** 713 F.Supp. at 382–83.

**16.** S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912.

**17.** 713 F.2d at 383.

**18.** 713 F.Supp. at 383, *citing Johnson,* 488 F.2d at 719.

**19.** *Burke v. Keenum,* No. 288–067, 1989 WL 14681 (S.D.Ga. Feb. 21, 1989).

**20.** *Id.* In *Burke,* the court calculated attorney fees in accordance with the rate at which federal judges are compensated. The court found that the annual salary of a district judge, $89,500, divided by 2000 hours resulted in an hourly rate of $45. This base rate was augmented by 50% to cover overhead expenses, so an award of $67.50 per hour was authorized.

**21.** 713 F.Supp. at 385.

**22.** *Islamic Center of Miss. v. City of Starkville,* 876 F.2d 465, 469 (5th Cir.1989).

**23.** *Islamic Center,* 876 F.2d at 468.

**610**

attempt to show clear error in the factual findings or in the fee calculation derived therefrom. The district court instead held that the Master erred in law by: (1) relying too heavily on the "going rate" in the community in determining an hourly compensation rate; and (2) failing to recognize the nexus between congressional inaction on judicial compensation and the calculation of attorney fees. We reject both these holdings.

■ Common sense dictates that the "going rate" in the community is in actuality the most critical factor in determining a reasonable fee. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience, and reputation." [24]

■ The issue at hand is the determination of a reasonable level of attorney compensation under the Civil Rights Attorney's Fees Awards Act; congressional action or inaction on judicial compensation is a matter on which, we suspect, judges might possibly have strong feelings, but which nevertheless has a relevancy to the issue at hand no greater than Judge Dobie's proverbial hiccup of a consumptive gnat. Congressional intent is indeed important in seeking the meaning of a statutory provision, but in such an endeavor only Congressional pronouncements concerning the Act under consideration are relevant. Section 1988 makes no mention of judicial compensation and the level of such compensation should have no effect on the fees awarded attorneys for their work in civil rights cases.

### B. Hours Expended

The next step in the calculation of the lodestar is the ascertainment of reasonable hours. Case law indicates that the comput-

er should not always have its way in every fee computation, and that "excessive, redundant, or otherwise unnecessary" hours should be excluded from the amount claimed.[25] This means that the hours excluded are those that would be unreasonable to bill a client, and therefor to one's adversary, irrespective of the skill, reputation, or experience of counsel.[26]

In the present case the Master found that the hours claimed by plaintiffs' counsel in litigating the post-judgment attorneys' fee issues were properly documented, reasonable, and "not duplicative or excessive". The district court rejected the Master's findings on this matter and held "time expended on the attorneys' fees issue shall be compensated at 80% of the awarded rate." [27] No reason was given for the reduction.

■ As noted above, the determination of a reasonable hourly rate is a finding of fact reviewable under the clearly erroneous standard. No clear error has been shown in the Master's findings, so we hold that the district judge erred in awarding a lower hourly rate for time reasonably expended litigating attorney fees than for hours expended contesting the merits of the case. It is well settled that time expended litigating attorney fees is fully compensable.[28] Of course, time expended on the attorney fee issue is subject to the same documentation requirements as other fees, and may be reduced for such reasons as duplication or excessiveness. However, no such bases for reduction are present in this case.

### II. Enhancement

■ The propriety of contingent enhancements under § 1988 is governed by the Supreme Court's decision in *Delaware Valley II*, in which the Court refused to enhance a lodestar despite the fact that

24. *Norman v. Montgomery Housing Auth.*, 836 F.2d 1292, 1299 (11th Cir.1988), *citing Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).

25. *Norman v. Montgomery Housing Authority*, 836 F.2d at 1301, *citing Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

26. *Id.*

27. 713 F.Supp. at 385.

28. *Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983).

counsel had been retained on a contingency basis. At the close of its opinion the plurality indicated that contingency enhancements, if allowed at all, should be limited to the "exceptional cases" in which "there [is] evidence in the record ... that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." [29] In what has become the accepted guideline for determining when lodestar contingency enhancement is permissible under § 1988 [30], Justice O'Connor first concluded in a separate concurring opinion that enhancement should not be authorized unless the prevailing party adduces affirmative evidence to show: (1) that it would have faced substantial difficulty in locating counsel in the relevant market without a contingency multiplier; and, (2) not that the legal risks of the particular case warrant enhancement, but instead that the rate of compensation for "contingent fee cases as a class" in the relevant market was different from cases in which payment was certain.[31] The party seeking attorney fees based on contingency bears the burden of proof under this two part test,[32] and whether the evidence advanced by that party satisfies the burden is a determination of fact.[33]

In the present case the Master found the evidence submitted by the fee applicants demonstrated that contingency enhancement was necessary to induce competent counsel to accept civil rights cases in the Alabama market; accordingly, he held that the first prong of Justice O'Connor's *Delaware Valley II* test was satisfied. The district court held that the Master's findings on this point were clearly erroneous. According to the court, while the evidence considered by the Master confirmed earlier findings that enhancement was necessary to attract competent civil rights counsel to the case in chief, the fee applicants had failed to show that the non-contingent rates were insufficient to induce competent counsel to assume responsibility for the post-judgment litigation. In the court's view risks associated with the post-judgment phase of the litigation could not reasonably be greater than those associated with the litigation of the main case. The court also found that plaintiffs' counsel had failed to show that the quality of service rendered during the post-judgment phase of the litigation was "superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional'." [34]

After a careful examination of the Master's findings, we agree with the district court's conclusion that the fee applicants failed to show that contingency enhancement was necessary to induce competent counsel to take on the post-judgment work in this case.

Consider that one of the principal centers of focus at this stage of the litigation is compensation of the attorneys themselves. As Lincoln has said, a lawyer's time is his stock in trade. If a lawyer is required to expend his professional time in order to obtain just compensation, that time is no less valuable simply because of the objective. However, there is a considerable body of opinion that self-interest is one of the strongest of motivators, and difficult to perceive as one needing the encouragement of enhancement, particularly if the lodestar hourly rate has been fairly determined.

█ In his report the Master cited several factors in support of his position on the enhancement issue, such as the substantial recovery, and the complex, protracted nature of the case. These factors are related to the legal and economic risks associated with this particular case, and should be reflected in the number of hours

**29.** *Delaware Valley II,* 483 U.S. at 731, 107 S.Ct. at 3089 (White, J., plurality opinion).

**30.** *See Islamic Center,* 876 F.2d at 471, and cases cited therein.

**31.** *Delaware Valley II,* 483 U.S. at 731–34, 107 S.Ct. at 3089–91 (O'Connor, J., concurring in part and concurring in the judgment).

**32.** *Id.*

**33.** *Islamic Center,* 876 F.2d at 472.

**34.** *Martin,* 713 F.2d at 386, *citing Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984).

expended and the hourly rate.[35] "The lodestar—the product of reasonable hours times a reasonable rate—is flexible enough to account for great variation in the nature of the work performed in, and the challenges presented by, different cases."[36] "[I]t is presumed that when counsel demonstrates considerable ability in overcoming unusual difficulties that have arisen in a case, counsel will be compensated for those accomplishments by means of an appropriate hourly rate multiplied by the hours expended."[37] The hourly rate calculated by the master, which was over and above that awarded by Judge Pittman in the main case, was adequate to compensate the fee applicants for the risks peculiar to the post-judgment phase of the litigation.

 The only other factor relied upon by the Master to justify enhancement was contingency. We agree with Justice O'Connor's position in *Delaware Valley II* that the method for calculating a fee award based on contingency should be "objective and non-arbitrary in practice."[38] To avoid possible inequities in the calculation of fee awards based on contingency Justice O'Connor and the plurality agreed that some constraint on a court's discretion in setting fees was appropriate. This constraint is embodied in the requirement that the fee applicant prove that without an adjustment for risk the prevailing party "would have faced substantial difficulties in finding counsel in the local or relevant market."[39] There was considerable testimony in the present case that the class of attorneys who can successfully prosecute a complex civil rights class action has diminished considerably in the past several years, but this general finding alone does not justify enhancement. The evidence presented was not sufficiently directed to the question at hand: whether an enhancement was necessary to attract competent

local counsel for such low risk post-judgment work. The rationale adopted by the Master could be used to justify enhancement in almost any civil rights case, and therein lies the danger that such a standard will be arbitrarily or unjustly applied. The lodestar is presumed to be the reasonable fee authorized by § 1988, and enhancement for the risk of non-payment should be reserved for exceptional cases where the need and justification for such enhancement are supported by evidence in the record and specific findings by the courts.[40] Such an enhancement was appropriate in the case in chief, but neither the findings of facts nor the evidence presented by plaintiffs' counsel indicate that the enhancement was necessary to attract competent practitioners to conduct the post-judgment phases of the litigation. Thus the district court correctly determined that the Master clearly erred in holding that the fee applicants had met their burden of proof under the guidelines of *Delaware Valley II.*

### Conclusion

In many cases arising under the civil rights laws, the citizen who must sue to enforce the law often has little or no money with which to hire a lawyer. Congress has determined that private citizens are to be able to assert their civil rights, and if those who violate the civil rights laws are not to proceed with impunity, then citizens must have the opportunity to recover the costs of vindicating these rights in court.

However, § 1988 was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the counsel available to their opposition. It is well settled that the fees awarded under § 1988 should be adequate to attract competent counsel, but should not produce a windfall for the attorney.

**35.** *Delaware Valley II,* 483 U.S. at 734, 107 S.Ct. at 3091 (O'Connor, J., concurring in part and concurring in the judgment).

**36.** *Id., citing Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939.

**37.** *Id.*

**38.** 483 U.S. at 732, 107 S.Ct. at 3090 (O'Connor, J., concurring in part and concurring in the judgment).

**39.** *Id.* at 733, 107 S.Ct. at 3090.

**40.** *Id.* at 728–29, 107 S.Ct. at 3088 (plurality opinion by White, J.).

To determine an adequate fee the fact finder should seek to calculate a lodestar which takes into account the legal problems and risks associated with the case at hand. In establishing this calculated constant the court must look principally to the prevailing market rate in the relevant legal community and the documented hours expended on the case, so in the present action the district judge erred in rejecting such findings made by the Master and in substituting his own findings therefor.

The district court was correct in denying enhancement for the contingency of the case, for the plaintiffs' counsel have failed to prove that enhancement over and above the calculated lodestar is necessary to attract competent counsel to take on the post-judgment work for which they seek compensation. The lodestar must be assumed to represent the reasonable rate mandated by § 1988, so while enhancement was undoubtedly appropriate in the securing the underlying judgment in this case, the enforcement of that judgment is not so exceptional as to justify an upward adjustment. The judgment of the district court is AFFIRMED IN PART and REVERSED IN PART and the case is REMANDED for a re-calculation of fees in light of the principles discussed herein.